

Smith(N)
Conditionally

**FILED**

MAY 25 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

### COMPLAINT UNDER CIVIL RIGHTS ACT 42 U.S.C. § 1983

Action Number  2:12cv294

(To be supplied by the Clerk, U. S. District Court)

Please fill out this complaint form completely. The Court needs the information requested in order to assure that your complaint is processed as quickly as possible and that all your claims are addressed. Please print/write legibly or type.

## I.   PARTIES

A.   Plaintiff:

1.   (a)   WILLIAM JAY DICAPRIO-CUOZZO
         (Name)
         NOTTOWAY CORRECTIONAL CENTER
     (c)   2892 (RTE. 650) SCHUTT ROAD
         (Address)
         BURKEVILLE, VIRGINIA 23922

   (b)   1121972
         (Inmate number)

**Plaintiff MUST keep the Clerk of Court notified of any change of address due to transfer or release. If plaintiff fails to keep the Clerk informed of such changes, this action may be dismissed.**

**Plaintiff is advised that only persons acting under the color of state law are proper defendants under Section 1983. The Commonwealth of Virginia is immune under the Eleventh Amendment. Private parties such as attorneys and other inmates may not be sued under Section 1983. In addition, liability under Section 1983 requires personal action by the defendant that caused you harm. Normally, the Director of the Department of Corrections, wardens, and sheriffs are not liable under Section 1983 when a claim against them rests solely on the fact that they supervise persons who may have violated your rights. In addition, prisons, jails, and departments within an institution are not persons under Section 1983.**

B.   Defendant(s):

1.   (a)   JANET TERRY
         (Name)
         NOTTOWAY CORRECTIONAL CENTER
     (c)   2892 (RTE. 650) SCHUTT ROAD
         (Address)
         BURKEVILLE, VIRGINIA 23922

         434-767-5543

   (b)   LAW LIBRARY COORDINATOR/
         REHABILITATION COUNSELOR
         (Title/Job Description)

         *OFFICIAL & INDIVIDUAL*
         * CAPACITY *



RECEIVED

MAY 18 2012

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

-1-

2.  (A) ELIZA S. WILLIS                    (B) INST. PROGRAM MANAGER

    (C) NOTTOWAY CORRECTIONAL CENTER           434-767-5543
        2892 (RTE. 650) SCHUTT ROAD
        BURKEVILLE, VIRGINIA 23922         *OFFICIAL & INDIVIDUAL CAPACITY*


3.  (A) HAROLD W. CLARKE                   (B) DIRECTOR OF VA D.O.C.

    (C) 6900 ATMORE DRIVE                      804-674-3000
        RICHMOND, VIRGINIA 23225
                                           *OFFICIAL & INDIVIDUAL CAPACITY*


4.  (A) AMBER D. JAMES                     (B) HUMAN RIGHTS ADVOCATE/
                                               INST. OMBUDSMAN
    (C) NOTTOWAY CORRECTIONAL CENTER
        2892 (RTE. 650) SCHUTT ROAD            434-767-5543
        BURKEVILLE, VIRGINIA 23922
                                           *OFFICIAL & INDIVIDUAL CAPACITY*


5.  (A) ANITA BRYANT                       (B) REGIONAL OMBUDSMAN

    (C) 9503-A HULL STREET ROAD            *OFFICIAL & INDIVIDUAL CAPACITY*
        RICHMOND, VIRGINIA 23236

## DEFENDANT LIABILITY CAPACITY

1. DEFENDANT, **JANET TERRY**, IS A REHABILITATIVE COUNSELOR FOR THE VIRGINIA DEPARTMENT OF CORRECTIONS AND AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF LEGAL SERVICES/LAW LIBRARY SUPERVISOR AND WAS ASSIGNED TO THE NOTTOWAY CORRECTIONAL CENTER.

2. DEFENDANT, **ELIZA S. WILLIS**, IS A TREATMENT PROGRAM SUPERVISOR FOR THE VIRGINIA DEPARTMENT OF CORRECTIONS AND AT ALL TIMES MENTIONED IN THE COMPLAINT, HELD SAME POSITION WITH A SUBSEQUENT RANK AND TITLE CHANGE TO INSTITUTION PROGRAM MANAGER; WHO OVERSEES THE TREATMENT DEPARTMENT; INCLUDING THE LEGAL SERVICES/LAW LIBRARY, AND WAS ASSIGNED TO THE NOTTOWAY CORRECTIONAL CENTER.

3. DEFENDANT, **HAROLD W. CLARKE**, IS THE DIRECTOR OF THE COMMONWEALTH OF VIRGINA DEPARTMENT OF CORRECTIONS. HE IS LEGALLY RESPONSIBLE FOR THE OVERALL OPERATION OF THE DEPARTMENT AND EACH INSTITUTION UNDER THE JURISDICTION; INCLUDING THE NOTTOWAY CORRECTIONAL CENTER.

4. DEFENDANT, **AMBER D. JAMES**, IS AN INSTITUTIONAL OMBUDSMAN HOLDING THE POSITION AND RANK OF THE HUMAN RIGHTS ADVOCATE FOR THE VIRGINIA DEPARTMENT OF CORRECTIONS AND AT ALL TIMES MENTIONED IN THIS COMPLAINT RELATED TO HER, WAS ASSIGNED TO THE NOTTOWAY CORRECTIONAL CENTER; WITH THE DUTIES AND RESPONSIBILITIES OF COORDINATING AND MONITORING THE FACILITY'S GRIEVANCE PROCEDURE AND IDENTIFYING ANY AND ALL AREAS OF WHICH MAY BE IN NEED OF CORRECTIVE ACTIONS AND FACILITATING FOLLOW-THROUGH.

5. DEFENDANT, **ANITA BRYANT**, IS THE REGIONAL OMBUDSMAN FOR THE VIRGINIA DEPARTMENT OF CORRECTIONS, HOLDING THE POSITION AND RANK OF HUMAN RIGHTS ADVOCATE SENIOR; EMPLOYED BY THE OFFICE OF OMBUDSMAN SERVICES RESPONSIBLE FOR MONITORING FACILITY GRIEVANCE PROCEDURES AND PROVIDING INVESTIGATIVE SERVICES FOR PRISONER GRIEVANCE APPEALS FOR THE VIRGINIA DEPARTMENT OF CORRECTIONS; AND AT ALL TIMES MENTIONED IN THIS COMPLAINT RELATED TO HER WAS ASSIGNED TO THE CENTRAL REGIONAL OFFICE.


**\*\*\* EACH DEFENDANT IS SUED INDIVIDUALLY AND IN HIS OR HER OFFICIAL CAPACITY. AT ALL TIMES MENTIONED, EACH ACTED UNDER COLOR OF STATE LAW \*\*\***

## II.   PREVIOUS LAWSUITS

A.   Have you ever begun other lawsuits in any state or federal court relating to your imprisonment?   Yes [ X ]   No [   ]

B.   If your answer to "A" is Yes: You must describe any lawsuit, whether currently pending or closed, in the space below.  If there is more than one lawsuit, you must describe each lawsuit on another sheet of paper, using the same outline, and attach hereto.

1.   Parties to previous lawsuit:

Plaintiff(s)   WILLIAM JAY DICAPRIO-CUOZZO

Defendant(s)   (SIX) VIRGINIA D.O.C. EMPLOYEES

2.   Court (if federal court, name the district; if state court, name the county):

UNITED STATES DISTRICT COURT - EASTERN DISTRICT OF VIRGINIA

3.   Date lawsuit filed:   AUGUST 9, 2007

4.   Docket number:   2:07-CV-351

5.   Name of Judge to whom case was assigned:

HONORABLE REBECCA BEACH SMITH

6.   Disposition (Was case dismissed? Appealed? Is it still pending? What relief was granted, if any?) :

IMMEDIATELY RETALIATION BEGAN AND THE CASE WAS WITHDRAWN IN ORDER

TO PREVENT FURTHER ACTIONS.

ADDITIONAL LAWSUIT:

1.   Parties to previous lawsuit:

Plaintiff(s)   WILLIAM JAY DICAPRIO-CUOZZO

Defendant(s)   GERALD T. PUGH

2.   Court (if federal court, name the district; if state court, name the county):

COUNTY OF SUSSEX COUNTY CIRCUIT COURT

3.  Date lawsuit filed: __NOVEMBER 5, 2007__

4.  Docket number: __GV08-65__

5.  Name of Judge to whom case was assigned: _____

    __HONORABLE GAMMIEL G. POINDEXTER__

6.  Disposition (Was case dismissed? Appealed? Is it still pending? What relief was granted, if any?) :
    __DEFENDANT PUGH ENTERED NEGOTIATED SETTLEMENT__

    __AGREEMENT IN EXCHANGE FOR WITHDRAWING THE CASE.__

## III.  GRIEVANCE PROCEDURE

A.  At what institution did the events concerning your current complaint take place: _____

    __NOTTOWAY CORRECTIONAL CENTER - BURKEVILLE, VIRGINIA__

B.  Does the institution listed in "A" have a grievance procedure? Yes [ X ]  No [   ]

C.  If your answer to "B" is Yes:

    1.  Did you file a grievance based on this complaint? Yes [ X ]  No [   ]

    2.  If so, where and when: __ALL APPEALS FILED PURSUANT TO POLICY - ATTACHED__

    3.  What was the result? __GRIEVANCE HISTORY RELATING TO ALL ISSUES FOLLOWS__

    __AND IS ATTACHED.__

    4.  Did you appeal? Yes [ X ]  No [   ]

    5.  Result of appeal: __SOME APPEALS FOUNDED - SOME UNFOUNDED. (ATTACHED)__

        __ALL GRIEVANCES ARE ATTACHED AS EXHIBITS - WITH RESPONSES__

D.  If there was no prison grievance procedure in the institution, did you complain to the prison authorities? Yes [   ]  No [   ]

    If your answer is Yes, what steps did you take? _____

    _____N/A_____

E.  If your answer is No, explain why you did not submit your complaint to the prison authorities:

    _____N/A_____

    _____

| DATE OF GRIEVANCE | LOG NO. | SUBJECT OF GRIEVANCE | LEVEL I RESULT/DATE | LEVEL II RESULT/DATE | ATTACHED EXHIBIT NO. |
|---|---|---|---|---|---|
| 4/2010 | 220-10-REG 00084 | DENIAL OF/DELAYED ACCESS TO LAW LIBRARY | UNFOUNDED 5/5/2010 | UNFOUNDED 5/18/2010 | 4 |
| 4/23/2010 | EMERGENCY GRIEVANCE 045979 | ACCESS TO LAW LIBRARY - WITH VERIFIED FILING DEADLINE. | 4/23/2010 DEFENDANT TERRY RULED NOT EMERGE-NCY AND SCHEDULED FOR 7 DAYS LATER. | NO APPEALS | 5 |
| 5/24/2010 | 220-10-REG 00133 | POLICY ABOUT LEGAL COPY PROCEDURE. DOCUMENTS TAKEN OUT OF PRESENCE. | UNFOUNDED 6/21/2010 | UNFOUNDED 7/1/2010 | 6 |
| 6/2010 | 220-10-REG 00140 | DENIAL OF/DELAYED ACCESS TO LAW LIBRARY. (IN EXCESS OF 30 DAYS) | UNFOUNDED 6/21/2010 | UNFOUNDED 7/1/2010 | 7 |
| 6/11/2010 | EMERGENCY GRIEVANCE 018064 | ACCESS TO LAW LIBRARY - WITH VERIFIED FILING DEADLINE AND NEED OF NOTARY SERVICE AND LEGAL COPIES. (3 DAYS REMAINED ON DEADLINE). | 6/11/2010 DEFENDANT TERRY RULED "NON EMER." AND STATED "CANNOT ASSIST WITH NOTARY SERVICE OR LEGAL COPIES." | NO APPEALS | 8 |
| 6/22/2010 | 220-10-REG 00189 | DENIAL OF NOTARY SERVICE & LEGAL COPIES FOR VERIFIED FILING DEADLINE. | UNFOUNDED 7/21/2010 | UNFOUNDED 7/29/2010 | 9 |
| 8/2010 | 220-10-REG 00342 | DENIAL OF/DELAYED ACCESS TO LAW LIBRARY. (EXCESS OF 30 DAYS WAIT) | UNFOUNDED 9/20/2010 | UNFOUNDED 10/7/2010 | 10 |
| 8/2010 | 220-10-REG 00381 | DENIAL OF/DELAYED ACCESS TO LAW LIBRARY. (FILING DEDLINE VERIFIED & DEFENDANT TERRY ADVISED C/O IN CONTROL BOOTH "CANNOT ACCESS TODAY." | UNFOUNDED | UNFOUNDED | 11 |

| DATE OF GRIEVANCE | LOG NO. | SUBJECT OF GRIEVANCE | LEVEL 1 RESULT/DATE | APPEAL RESULT/DATE | EXHIBIT NO. |
|---|---|---|---|---|---|
| 8/2010 | 220-10-REG 00352 | DENIAL OF/DELAYED ACCESS TO LAW LIBRARY AND REQUEST FOR CASES FOR RESEARCH. (WAIT IN EXCESS OF 30 DAYS. SUBMITTED A REQUEST FOR RESEARCH MATERIAL AND WENT WITHOUT ANSWER. CASES NOT RECEIVED FROM INST. ATTORNEY 9/21/2010. | UNFOUNDED 10/5/2010 | UNFOUNDED 10/21/2010 | 12 |
| 10/25/2010 | EMERGENCY GRIEVANCE 047110 | ACCESS TO LAW LIBRARY ON VERIFIED DEADLINE. (WAS TOLD ACCESS WOULD BE GRANTED IF COMPLAINT WITHDRAWN. DID SO, BUT ACCESS DENIED.) | 10/25/2010 SHIFT SGT. RULED (PER JANET TERRY) NOT AN EMERGENCY & DIRECTED TO SUBMIT AN INFORMAL COMPLAINT OR REQUEST. | NO APPEALS | 13 |
| 11/2010 | NCC-10-REG 00002 | DENIAL OF/DELAYED ACCESS TO L.L. | **FOUNDED** ON 12/2/2010 INTERCEPTED BY DEFENDANT TOWNSEND AND HE ORDERED THE INST. OMBUDSMAN TO "UNFOUND" ON 12/3/2010 | NOT DISCOVERED UNTIL REVIEW OF FILE 7/2011 AND APPEALED 7/24/11 | 14<br><br>*LOCATED AT EXHIBIT 67* |
| 11/16/2010 | EMERGENCY GRIEVANCE 047498 | REQUEST FOR EMERGENCY COURT DEADLINE ACCESS 7 DAYS LATER STILL UNANSWERED. FILED FOR L.L. ACCESS FOR HENRICO CIRCUIT COURT AND FEDERAL VERIFIED FILING DEADLINE. | 11/16/2010 DEFENDANT JANET TERRY RULED NOT EMERGENCY | NO APPEALS ON EM. GR. | 15 |
| 12/29/2010 | NCC-10-REG-00006 | UP TO DATE AND CURRENT RESEARCH MATERIALS; DATA BASE NOT UPDATED FOR 6 MONTHS | UNFOUNDED 1/26/2011 | **FOUNDED** 2/10/2011 CONCLUDED THAT THE LAW LIBRARY DID NOT HAVE THE MINIMUM RELEVANT AND UP TO DATE CASE LAW MATERIALS AND ADMITTED NON-COMPLIANCE | 16 |

| DATE OF GRIEVANCE | LOG NO. | GRIEVANCE | LEVEL RESULT/DATE | LEVEL RESULT/DATE | EXHIBIT NO. |
|---|---|---|---|---|---|
| 1/22/2011 | NCC-11-REG 00069 | LEGAL COPIES SUBMITTED FOR COPYING PER EXISTING POLICY & COPIES MISSING NOT RETURNED TO INMATE. | UNFOUNDED 2/17/2011 | **FOUNDED** 3/7/2011 INVESTIGATION FOUNDED THAT THE LEGAL COPIES SUBMITTED FOR COPYING ON 12/27/ 2010 WERE NOT SENT BACK TO INMATE UNTIL 2/22/2011; ABOUT 57 DAYS LATER. CORRECTIVE ACTION WAS ORDERED. | 17 |
| 3/18/2011 | NCC-11-REG 00222 | RETALIATORY ACTS TAKEN BY DEPT. SUPERVISOR OF TREATMENT; DEFENDANT WILLIS FOR THE FOUNDED GRIEVANCES AGAINST HER DEPT., AS SHE ALSO SUPERVISES SECRETARY IN CHARGE OF MAKING LEGAL COPIES. | UNFOUNDED 4/7/2011 | UNFOUNDED 4/29/2011 | 18 **(EXCLUDED FROM FILING)** |
| 3/18/2011 | NCC-11-REG 00210 | LIBRARY DATA- BASE STILL NOT UPDATED; 9 MONTHS BEHIND IN CASE MATERIALS. | UNFOUNDED 4/12/2011 | UNFOUNDED 5/3/2011 | 19 |
| 3/24/2011 | NCC-11-REG 00220 | CHALLENGE OF MEMORANDUM DELAYING THE PROCESSING OF OUTGOING LEGAL MAIL. | UNFOUNDED 4/18/2011 | UNFOUNDED 5/11/2011 | 20 **(EXCLUDED FROM FILING)** |
| 5/20/2011 | NCC-11-REG 00345 | CHALLENGE OF LEGAL COPY PROCEDURE AND REQUIREMENT THAT INMATES RELINQUISH POSSESSION OF LEGAL DOCUMENTS IN ORDER FOR LEGAL COPIES TO BE MADE FOR PERIOD OF 7-10 DAYS. | UNFOUNDED 6/13/2011 DEFENDANT WILLIS CLEARLY STATED THAT "THERE ARE NO OTHER OPTIONS AVAILABLE TO INMATES" TO OBTAIN LEGAL COPIES HERE AT N C C | UNFOUNDED 6/30/2011 | 21 |
| 5/24/2011 | NCC-11-REG 00349 | LEGAL COPY POLICY OF WHICH ALLOWS SCREENING OF PRIVILEGED ATTORNEY/CLIENT | UNFOUNDED 6/17/2011 | UNFOUNDED 7/5/2011 | 22 **(EXCLUDED FROM FILING)** |

| DATE OF GRIEVANCE | LOG NO. | SUBJECT OF GRIEVANCE | RESULT/DATE | RESULT/DATE | EXHIBIT NO. | |
|---|---|---|---|---|---|---|
| | | COMMUNICATION OUTSIDE INMATE'S PRESENCE | | | | |
| 5/28/2011 | NCC-11-REG 00361 | VIOLATION OF ATTY/CLIENT PRIVILEGE/ READING OF INCOMING LEGAL MAIL | **WITHDRAWN** 6/27/2011 **DUE TO RETALIATION ATTEMPT** | | 23 | |
| 6/6/2011 | NCC-11-REG-00372 | DENIAL OF/ DELAYED ACCESS TO LAW LIBRARY. (RECEIVED ONLY 4.45 HRS ACCESS TO L.L. OVER A 42 DAY PERIOD. | UNFOUNDED 7/1/2011 | UNFOUNDED 7/19/2011 | 24 | |
| 7/6/2011 | NCC-11-REG 00470 | LEGAL FORMS GENERATED BY FACILITY CLERKS OF WHICH ARE NON-COMPLIANT. | **FOUNDED** 8/30/2011 LAW LIBRARY NOT IN COMPLIANCE WITH POLICY. | **FOUNDED** 9/12/2011 LAW LIBRARY NOT IN COMPLIANCE WITH POLICY. | 25 | ✳ |
| 7/6/2011 | NCC-11-REG 00471 | LEGAL FORMS GENERATED BY FACILITY CLERKS OF WHICH ARE NON-COMPLIANT. | **FOUNDED** 8/8/2011 LAW LIBRARY NOT IN COMPLIANCE WITH POLICY. | **FOUNDED** 8/10/2011 LAW LIBRARY NOT IN COMPLIANCE WITH POLICY. | 26 | ✳ |
| 7/19/2011 | NCC-11-REG 00487 | DENIAL OF ACCESS TO GRIEVANCE PROCEDURE (FOR ADMINISTRATIVE EXHAUSTION); REFUSAL TO ISSUE INFORMAL COMPLAINT | UNFOUNDED 8/11/2011 | **FOUNDED** 9/19/2011 CONCLUDED VIA INVESTIGATION CONCLUDED THAT ADMINISTRATION DID IN FACT DIRECT STAFF TO NOT ISSUE COMPLAINT FORMS. | 27 (LOCATED AT EXHIBIT #75) | ✳ |
| 8/4/2011 | NCC-11-REG 00517 | DENIAL OF/ DELAYED ACCESS TO LAW LIBRARY. | **FOUNDED** 8/30/2011 CONCLUDED LEGAL SERVICES WAS OUT OF COMPLIANCE WITH POLICY. | **FOUNDED** 9/12/2011 DECISION UPHELD. | 28 | ✳ |
| 8/17/2011 | NCC-11-REG 00537 | LEGAL DOCUMENTS SUBMITTED FOR COPIES WERE MISSING UPON RETURN TO INMATE. | UNFOUNDED 9/12/2011 | **FOUNDED** 10/5/2011 CONCLUDED THAT THE DOCUMENTS WERE IN FACT MISSING; AS WAS VERIFIED BY SERGEANT. | 29 | ✳ |

| DATE OF GRIEVANCE | LOG NO. | SUBJECT OF GRIEVANCE | LEVEL 1 RESULT/DATE | LEVEL 2 RESULT/DATE | EXHIBIT NO. |
|---|---|---|---|---|---|
| 10/19/2011 | NCC-REG-11-00659 | RETALIATORY ACTIONS TAKEN BY DEFENDANT ELIZA WILLIS, TO-WIT: COMPLAINANT WAS MOVED ON 10/6/2011 FROM THE PRE-HONOR (R.L.) HOUSING HE HAD BEEN HOUSED IN SINCE AUG. 2008 - DESPITE THE FACT HE EXCEEDED MEETING THE CRITERIA FOR SUCH. | UNFOUNDED 12/14/2011 | UNFOUNDED 01/05/2012 | 30 **(EXCLUDED FROM FILING)** |
| 11/30/2011 | NCC-11-REG 00750 | DENIAL OF/DELAYED ACCESS TO LAW LIBRARY (26 DAY LAPSE FROM DATE OF REQUEST/SCHEDULING). | UNFOUNDED 1/4/2012 | UNFOUNDED 1/30/2012 | 31 |
| 12/7/2011 | NCC-REG-11-00766 | RE-OCCURRENCE OF LOG NO. #00487, OF WHICH WAS FOUNDED ON LEVEL II; CONCLUDING A VIOLATION IN POLICY; TO-WIT: DENYING ACCESS TO ADULT GRIEVANCE PROCEDURE IN FAILING TO ISSUE INFORMAL COMPLAINT FORM UPON REQUEST - IN ATTEMPT TO HINDER EXHAUSTION. | UNFOUNDED 1/18/2012 | **FOUNDED** 2/08/2012. LEVEL I DECISION OVERTURNED. INVESTIGATION CONCLUDED A SECOND VIOLATION OF DENYING ACCESS TO GRIEVANCE PROCEDURE BY N.C.C. STAFF. | 32 **(LOCATED AT EXHIBIT #76)** ✳ |
| 01/09/2012 | NCC-REG-12-00016 | DENIAL OF/DELAYED ACCESS TO LAW LIBRARY; TO-WIT: AFTER HAVING BEEN SCHEDULED ON THE WAITING LIST SINCE NOVEMBER 17, 2011, AND ON DECEMBER 19, 2011, A MASTER PASS LIST WAS ISSUED WITH INACCURATE AND NON-CURRENT INFORMATION; THUS HINDERING RELEASE FROM HOUSING UNIT. | UNFOUNDED 2/3/2012 | **FOUNDED** 2/22/2012 PRISONERS NOT PROPERLY NOTIFIED OF THEIR SESSIONS. | 33 ✳ |
| 01/17/2012 | NCC-12-REG 00030 | REQUEST FORM TO LAW LIBRARY AND NOT RESPONDED TO; OUT OF COMPLIANCE WITH WARDEN DIRECTIVE | **FOUNDED** 3/14/2012 DEFENDANT J. TERRY FOUND TO BE NON-COMPLIANT WITH WARDEN'S DIRECTIVE. | SATISFIED. NO APPEAL NECESSARY. | 34 ✳ |

| DATE OF GRIEVANCE | SUBJECT LOG NO. | GRIEVANCE | FIRST RESULT/DATE | FINAL RESULT/DATE | ATTACHED EXHIBIT NO. |
|---|---|---|---|---|---|
| 01/17/2012 | NCC-12-INF 00169 | NOT NOTIFIED OF DATE ALLEGEDLY SCHEDULED TO ATTEND LAW LIBRARY; MISSED TIME/RESCHEDULE DATES WITHOUT NOTICE. | 01/23/2012 DEFENDANT WILLIS ADMITS SCHEDULING CONFLICT ERROR ON THEIR END | N/A | 35 |
| 2/21/2012 | NCC-12-REG-00090 | ON LIST TO ATTEND LAW LIBRARY FOR A PERIOD OF CIRCA 23 DAYS BEFORE ALLOWED ACCESS. DENIAL/DELAYED ACCESS TO COURTS. | UNFOUNDED 3/16/2012 CLAIMING THAT "WEEKENDS" DO NOT COUNT IN CALCULATION. | UNFOUNDED 4-03-2012 CLAIMED INCONCLUSIVE EVIDENCE SUPPORTING COURT FILING, DESPITE HAVING PROVIDED SUCH; AND EVADED WEEKEND ISSUE ALL TOGETHER | 79 |
| 01/24/2012 | NCC-12-REG-00044 | RELEASED UNTIMELY FROM HOUSING UNIT AND DENIED ACCESS. | UNFOUNDED 02/15/2012 | UNFOUNDED 03/02/2012 RULED THAT INCONCLUSIVE EVIDENCE EXISTS FROM BOTH STAFF AND PLAINTIFF IN ORDER TO REACH A CONCLUSIVE DECISION. | 80 |
| 03/14/2012 | REJECTED ON INTAKE | TWENTY-FOUR (24) DAY WAIT FROM POINT OF NOTIFICATION OF FILING DEADLINE AND NEED TO ACCESS LAW LIBRARY, UNTIL ACTUAL ACCESS. | DEFENDANT JAMES RECEIVED COMPLAINT DATED 3/14/12 BUT WAITED (8) DAYS TO STAMP AS RECEIVED; THEN REJECTED THE COMPLAINT AS 5 DAYS LATE. | | 81 |

## MEMORANDUM OF LAW
### APPLICABLE TO ALL GROUNDS

"THERE IS NO IRON CURTAIN DRAWN BETWEEN THE CONSTITUTION AND THE PRISONS OF THIS COUNTRY." WOLFF V. MCDONNELL, 418 U.S. 539, 552-56 (1974). WHEN THE REMEDIAL POWERS OF A FEDERAL COURT ARE INVOKED TO PROTECT THE CONSTITUTIONAL RIGHTS OF INMATES, THE COURT MAY NOT TAKE A "HANDS-OFF" APPROACH. SEE BELL V. WOLFISH, 441 U.S. 520, 562 (1979); PROCUNIER V. MARTINEZ, 416 U.S. 396, 404-07 (1974). ALSO SEE GENERALLY FOX, THE FIRST AMENDMENT RIGHTS OF PRISONERS, 63 J. CRIM. L., CRIMINOLOGY & POLICE SCI. 162, 162-164 (1972).

EVERY PERSON WHO, UNDER COLOR OF ANY STATUTE, ORDINANCE, REGULATION, CUSTOM, OR USAGE, OF ANY STATE OR TERRITORY, SUBJECTS, OR CAUSES TO BE SUBJECTED, ANY CITIZEN OF THE UNITED STATES OR OTHER PERSON WITHIN THE JURISDICTION THEREOF TO THE DEPRIVATION OF ANY RIGHTS, PRIVILEGES, OR IMMUNITIES SECURED BY THE CONSTITUTION AND LAWS, SHALL BE LIABLE TO THE PARTY INJURED IN AN ACTION AT LAW, SUIT IN EQUITY, OR OTHER PROPER PROCEEDING FOR REDRESS. 42 U.S.C. §1983 (1970). IN SCHEUER V. RHODES, 416 U.S. 232 (1974), THE UNITED STATES SUPREME COURT STATED: "...THE ELEVENTH AMENDMENT PROVIDES NO SHIELD FOR A STATE OFFICIAL CONFRONTED BY A CLAIM HE HAD DEPRIVED ANOTHER OF A FEDERAL RIGHT UNDER THE COLOR OF STATE LAW." SCHEUER, AT 237. THE COURT CITED THE CASE OF EX PARTE YOUNG, 209 U.S. 123 (1908), STATING THAT A STATE OFFICIAL ACTING UNDER STATE LAW IN A MANNER THAT VIOLATES THE FEDERAL CONSTITUTION IS "..STRIPPED OF HIS [OR HER] OFFICIAL OR REPRESENTATIVE CHARACTER AND IS SUBJECTED IN HIS [OR HER] PERSON TO THE CONSEQUENCES OF HIS [OR HER] INDIVIDUAL CONDUCT." EX PARTE YOUNG, AT 159-160. OFFICIALS ARE NOT IMMUNE IF THEY ACTED "WITH SUCH DISREGARD OF THE PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS THAT HIS [OR HER] ACTION CANNOT REASONABLY BE CHARACTERIZED AS BEING IN GOOD FAITH." KNELL V. BENSINGER, 522 F.2D 720 (7TH CIR.(1975)).

READY ACCESS TO THE COURTS IS A "FUNDAMENTAL CONSTITUTIONAL RIGHT." BOUNDS V. SMITH, 430 U.S. 817, 825-28 (1977); ACCORD, CRUZ V. HAUCK, 475 F.2D 475, 476 (5TH CIR. 1973). REGULATIONS AND PRACTICES THAT UNJUSTIFIABLY OBSTRUCT SUCH ACCESS ARE INVALID. PROCUNIER V. MARTINEZ, 416 U.S. AT 419; SEE EX PARTE HULL, 312 U.S. 546, 549 (1941). ACCESS TO COURTS ENTAILS NOT ONLY FREEDOM TO FILE PLEADINGS BUT ALSO FREEDOM TO EMPLOY, WITHOUT RETALIATION OR HARASSMENT, CAMPBELL V. BETO, 460 F.2D 765, 765 (5TH CIR. 1972); ANDRADE V. HAUCK, 452 F.2D 1071, 1072 (5TH CIR. 1971), THOSE  ACCESSORIES WITHOUT WHICH LEGAL CLAIMS CANNOT BE EFFECTIVELY ASSERTED; A LAW LIBRARY CONTAINING BASIS LEGAL MATERIALS; LEGAL ASSISTANCE BOTH FROM LAWYERS AND FROM OTHER INMATES; AND THE ABILITY TO COMMUNICATE WITH COURTS, ATTORNEYS, AND PUBLIC OFFICIALS. SEE BOUNDS V. SMITH, 430 U.S. AT 825-28; WOLFF V. MCDONNELL, 418 U.S. 577-80; CORPUS V. ESTELLE, 551 F.2D 68, 70-71 (5TH CIR. 1977); NOVAK V. BETO, 453 F.2D 661, 663-64 (1971), CERT. DENIED, 409 U.S. 968 (1972).

"'(A)N INMATE'S RIGHT OF UNFETTERED ACCESS TO THE COURTS IS AS FUNDAMENTAL A RIGHT AS ANY OTHER HE MAY HOLD ... ALL OTHER RIGHTS OF AN INMATE ARE ILLUSORY WITHOUT IT .. .'" MCCRAY V. SULLIVAN, 509 F.2D 1332, 1337 (1975), CITING ADAMS V. CARLSON, 488 F.2D 619, 630 (1973). AN INMATE HAS A CONSTITUTIONAL RIGHT OF ACCESS TO THE COURTS FOR THE PURPOSE OF PRESENTING HIS CLAIMS, A RIGHT THAT PRISON OFFICIALS CANNOT UNREASONABLY OBSTRUCT AND THAT STATES HAVE AFFIRMATIVE OBLIGATIONS TO ASSURE. BOUNDS, AT 821-23 (1977); WOLFF, AT 577-80 (1974); DAVIDSON V. SCULLY, 694 F.2D 251, 253-54 (1972).

A COROLLARY TO THE WELL ESTABLISHED CONSTITUTIONAL RIGHTS AS AFOREMENTIONED IS THE FIRST AMENDMENT RIGHT GUARANTEED PRISONERS TO UNFETTERED PRIVILEGED CONFIDENTIAL COMMUNICATIONS WITH THE COURTS, ATTORNEYS, STATE AND FEDERAL AGENCIES.  ANY INFRINGEMENT OF THE RIGHTS OF THE PRISONER-PLAINTIFF IS INCLUDED WITH A CONCURRENT ABRIDGEMENT OF THE RIGHT TO ACCESS THE COURTS.  THE PHENOMENON OF CENCORSHIP,

OF COURSE, APPEARS IN A MULTITUDE OF FORMS. ITS ESSENCE IS "INTERFERRENCE WITH

...INTENDED COMMUNICATIONS." SEE PROCUNIER V. MARTINEZ, 416 U.S. AT 408-409. THE

PRACTICE OF CENSORSHIP MAY EQUALLY INVOLVE DIRECT, OR INDIRECT, INTERFERENCE. THE

IMPORTANCE OF PERMITTING  FREE AND UNINHIBITED ACCESS BY PRISONERS TO BOTH ADMINISTRATIVE

AND JUDICIAL FORUMS FOR THE PURPOSE OF SEEKING REDRESS OF GRIEVANCES WARRANTS PROTECTION

AGAINST THE REALITY OR THE CHILLING THREAT OF ADMINISTRATIVE INFRINGEMENT. SOSTRE

V. MCGINNIS, 442 F.2D 178, 200 (1971).


OTHER COURTS HAVE CONSISTENTLY AFFORDED EXTENSIVE PROTECTIONS TO INMATE COMMUNICATIONS

WITH THE COURTS, PUBLIC OFFICIALS, OR ATTORNEYS ON THE BASIS OF A RIGHT OF ACCESS

TO THE COURTS. MOORE V. CICCONE, 459 F.2D. 574, 578 (1972)(EN BANC)(LAY, HEANEY,

BRIGHT & ROSS, JJ., CONCURRING); COLEMAN V. PEYTON, 362 F.2D 905, 907 (4TH CIR.

1996). FOR  EXAMPLE, IN ADAMS V. CARLSON, 488 F.2D AT 632, THE SEVENTH CIRCUIT

UPHELD A CHALLENGE TO A REQUIREMENT THAT IN A PRISON VISITING ROOM LAWYERS MEETING

WITH PRISONER-CLIENTS TRANSMIT DOCUMENTS AND OTHER WRITTEN MATERIAL TO PRISONERS

POSITIONED ON THE OTHER SIDE OF THE GLASS PARTITION ONLY THROUGH PRISON GUARDS,

WHO HAD TEMPORARY BUT UNOBSERVED POSSESSION OF THE MATERIALS. THE ARRANGEMENT PLACED

AN IMPERMISSIBLE BURDEN ON THE PROCESS OF CONSULTATIONS BETWEEN ATTORNEYS AND THEIR

CLIENTS.  THE INMATE'S RIGHT TO PRIVILEGED COMMUNICATIONS WITH HIS LAWYER AND/OR

THE COURTS IS VIOLATED WHEN SUCH MATERIALS ARE HELD OUTSIDE THE INMATE'S POSSESSION

UNOBSERVED.  JUST AS AN INMATE IS TO BE PRESENT DURING THE OPENING OF HIS LEGAL

MAIL, SO TOO SHALL HE BE PRESENT WITH ALL OF HIS LEGAL DOCUMENTS IN NEED OF COPYING

DURING THE PROCESS OF INITIATING FILING WITH ANY COURT. ANY UNOBSERVED INSPECTIONS

OF LEGAL DOCUMENTS, WHETHER COMMUNICATIONS TO OR FROM ATTORNEYS OR THE COURTS,

WOULD DILUTE PRIVATE PRIVILEGED COMMUNICATIONS VITAL TO THE EFFECTIVE ASSISTANCE

OF COUNSEL AND ACCESS TO THE COURTS. BACH V. ILLINOIS, 504 F.2D 1100, 1102 (1974),

ALSO SEE SMITH V. ROBBINS, 328 F.SUPP. 162, 164-165 (1971), AFF'D IN PERT. PART,

(1972), 454 F.2D 696; TAYLOR V. STERRATT, 532 F.2D 462, 470-72 (1976).

MAIL THAT IS SENT TO PRISONERS FROM ATTORNEYS, COURTS, AND GOVERNMENT OFFICIALS IS PROTECTED BY THE FIRST AND SIXTH AMENDMENTS. THIS MEANS THAT PRISON OFFICIALS ARE NOT ALLOWED TO READ NOR CENSOR THESE TYPES OF DOCUMENTS/MAILINGS. SUCH CAN ONLY BE INSPECTED FOR CONTRABAND "AS LONG AS IT IS DONE IN FRONT OF THE PRISONER." WOLFF V. MCDONNELL, 418 U.S. 539 (1974). LIKEWISE, LITIGATIONS, DOCUMENTS AND/OR MAIL SENT BY PRISONERS TO ATTORNIES OR COURTS IS ALSO PRIVILEGED AND MAY NOT BE OPENED NOR SCREENED UNLESS PRISON OFFICIALS HAVE A SPECIAL SECURITY INTEREST THAT MUST MEET CERTAIN FOURTH AMENDMENT REQUIREMENTS. WASHINGTON V. JAMES, 782 F.2D 1134 (1986); TAYLOR V. STERRETTE, 532 F.2D 462 (1976).

A PRO SE COMPLAINT SHOULD NOT BE HELD TO AS RIGOROUS A STANDARD AS FORMAL PLEADINGS PREPARED BY AN ATTORNEY. HAINES V. KERNER, 404 U.S. 519, 520-21 (1972)(PER CURIAM); BOAG V. MACDOUGALL, 454 U.S. 364 (1982)(PER CURIAM).

IN ORDER TO STATE A CAUSE OF ACTION UNDER 42 U.S.C. §1983, PLAINTIFF MUST ALLEGE THAT SOME PERSON ACTING UNDER COLOR OF STATE LAW DEPRIVED HIM OF A FEDERAL RIGHT. GOMEZ V. TOLEDO, 446 U.S. 635, 640 (1980); ALDICKES V. S.H. KRESS & COO., 398 U.S. 144, 150 (1970); DWYER V. REGAN, 777 F.2D 825, 828 (1985). THAT THE DEFENDANTS ARE STATE ACTORS IS NOT IN DISPUTE.

**GROUNDS COMMON TO:**         PAGE
**DEFENDANT**         LOCATION(S)

Janet Terry.................................................................................. 16, 27, 34

Eliza S. Willis.............................................................................. 16, 27, 34

Harold W. Clarke......................................................................... 16, 27, 34, 40

Amber D. James........................................................................... 16, 27, 34, 40

Anita Bryant................................................................................ 16, 27, 34, 40

## IV. STATEMENT OF THE CLAIM

CLAIM ONE:

(COMMON TO ALL DEFENDANTS)

THE EXISTING POLICY, PRACTICE AND PROCEDURE
BEING EXECUTED AND ENFORCED AT THE NOTTOWAY CORRECTIONAL
CENTER REGARDING PRISONERS OBTAINING "LEGAL COPIES" IS
INDISPUTABLY UNCONSTITUTIONAL IN VIOLATION OF THE FIRST, FIFTH,
SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION,
AS WELL AS ARTICLE I, SECTION 8 OF THE VIRGINIA CONSTITUTION; TO-WIT:

"PRISONERS ARE FORCED TO SURRENDER POSSESSION OF THEIR
LEGAL DOCUMENTS IN NEED OF COPYING TO PRISON OFFICIALS FOR
A PERIOD OF CIRCA 7-10 DAYS 'OUTSIDE THE PRESENCE OF THE PRISONER,'
OR ARE DENIED LEGAL COPIES."

1. VIRGINIA DEPARTMENT OF CORRECTION'S OPERATING PROCEDURE 866.3 (SUPERCEDES L.O.P. 841.F, DATED MARCH 3, 2009) EFFECTIVE DECEMBER 1, 2009 (TITLED "LEGAL SERVICES") WAS INSTITUTED WITH PURPOSE "TO PROVIDE UNIFORM, WRITTEN PROCEDURES ON THE AVAILABILITY OF LEGAL SERVICES TO OFFENDERS AT NOTTOWAY CORRECTIONAL CENTER ("N.C.C.") AND WORK CENTER." (EXHIBIT #2). OPERATING PROCEDURE 866.3 ("O.P. 866.3") STIPULATES THE PROCEDURE THAT MUST BE FOLLOWED BY THE PRISON POPULATION IN ORDER TO OBTAIN LEGAL COPIES. IN RELEVANT PART, THE POLICY READS:

"WHEN AN OFFENDER REQUESTS LEGAL COPIES THE FOLLOWING STEPS WILL BE FOLLOWED:

1. OFFENDERS REQUESTING PHOTOCOPIES WILL SUBMIT A COMPLETED REQUEST FOR LEGAL COPIES FORM, A WITHDRAWAL FORM AND THE MATERIAL TO BE COPIED TO THE TREATMENT PROGRAM SUPERVISOR'S SECRETARY. THE INFORMATION TO BE COPIED MUST BE SUBMITTED AT LEAST TEN (10) WORKING DAYS PRIOR TO THE DATE THE OFFENDER NEEDS THESE COPIES. THE AMOUNT OF THE WITHDRAWAL SLIP MUST COINCIDE WITH THE NUMBER OF COPIES TIMES $0.25 CENTS A COPY (SINGLE SIDE PAPER). (EXHIBIT #2).

2. THE TREATMENT PROGRAM SUPERVISOR'S SECRETARY/DESIGNEE WILL ENSURE THAT THE NUMBER OF COPIES REQUESTED TIMES $0.25 CENTS A COPY (SINGLE SIDE PAPER) EQUATES TO THE AMOUNT OF THE CASH WITHDRAWAL SLIP.

NOTE: IF THE AMOUNT ON THE CASH WITHDRAWAL SLIP IS INCORRECT THE INSTITUTIONAL PROGRAM MANAGER'S SECRETARY/DESIGNEE WILL RETURN ALL ITEMS TO INCLUDE THE CASH WITHDRAWAL SLIP TO THE OFFENDER WITH AN EXPLANATION

-16-

OF THE MISCALCULATION.  THE  OFFENDER MUST FILL OUT  ANOTHER CASH WITHDRAWAL
SLIP FOR THE CORRECT AMOUNT.

3.   THE INSTITUTIONAL PROGRAM MANAGER'S SECRETARY/DESIGNEE WILL SEND THE
ORIGINAL OF THE COMPLETED FORM, ALONG WITH THE CASH WITHDRAWAL SLIP TO THE ACCOUNTING
DEPARTMENT.

4.   THE ACCOUNTING DEPARTMENT WILL PROCESS THE CASH WITHDRAWAL SLIP  PER
POLICY AND SEND THE INSTITUTIONAL  PROGRAM MANAGER APPROVAL/DISAPPROVAL OF THE
CASH WITHDRAWAL SLIP.

5.   THE INSTITUTIONAL PROGRAM MANAGER'S SECRETARY WILL ENSURE THAT THE LEGAL
COPIES ARE MADE AND RETURNED TO THE OFFENDER WHEN THE ACCOUNTING DEPARTMENT RETURNS
THE RECEIPT FOR SUCH.


SEE ATTACHED EXHIBIT #2, "O.P. 866.3" @ (I)(3)(1-5); PAGES 6-7.


2.  ARGUENDO, TO BETTER ASSIST THIS HONORABLE COURT IN UNDERSTANDING FACTUALLY

THE PROCESS REQUIRED, PLAINTIFF RESPECTFULLY STATES:


3.  AS THIS HONORABLE COURT IS INDISPUTABLY AWARRE, BOTH FEDERAL RULES OF CRIMINAL

AND  CIVIL PROCEDURES AS WELL AS LOCAL STATE SUPREME COURT RULES FOR FILING IN

STATE COURTS REQUIRE NOT ONLY THE LITIGANT TO FILE HIS  [HER] PLEADING IN A SET

NUMBER OF MULTIPLE COPIES BUT ALSO IS MANDATED SERVICE  OF PROCESS BE  PERFORMED

UPON THE RESPONDENT OR ATTORNEY FOR THE RESPONDENT.  THIS IS THE CASE WHETHER THE

LITIGANT IS FILING A CIVIL TORT; FEDERAL CIVIL RIGHTS PLEADING; DIRECT APPEALS

OF CRIMINAL AND/OR CIVIL PLEADINGS; STATE AND/OR FEDERAL HABEAS CORPUS; OR FOR

THAT MATTER, ANY POST-CONVICTION PROCEEDING.


4.  UNDER THE CURRENT POLICY ACTIVE AT THE N.C.C., IN ORDER TO OBTAIN HIS LEGAL

COPIES, THIS PLAINTIFF MUST PERFORM THE  FOLLOWING:


5.  FILL OUT A LEGAL COPY REQUEST FORM AND MONEY WITHDRAWAL REQUEST. (EXHIBIT

#42). YOU WILL NOTE THAT THE REQUEST FORM CLEARLY SEEKS DOCUMENTS "..DIRECTLY RELATED

TO [MY] INCARCERATION.." . THIS ALSO SHALL BE DONE "AT  LEAST TEN (10) WORKING

DAYS PRIOR TO THE DATE NEEDED."

6.   THE  ABOVE FORMS MUST BE PLACED IN A MANILLA ENVELOPE <u>WITH THE LEGAL DOCUMENTS</u>
<u>YOU SEEK COPIES OF</u>. THIS THEN MUST BE PRESENTED TO A SERGEANT FOR WITNESS OF YOUR
SIGNATURE (ON THE MONEY WITHDRAWAL SLIP) AND THE <u>**SURRENDERED TO THE SERGEANT**</u>. (IT
IS NOTED THAT SOME SERGEANTS WILL LET YOU "SEAL" THE ENVELOPE, WHEREAS THE MAJORITY
WILL REFUSE TO ALLOW YOU TO SEAL IT). THE SERGEANT  THEN DELIVERS THIS ENVELOPE
THE THE WATCH COMMANDER'S OFFICE AND PLACES THE PACKAGE IN AN OPEN/UNSECURED  WOODEN
BOX/CRATE WITH ALL THE OTHER VENDOR ORDER REQUESTS/MONEY ORDER WITHDRAWAL REQUESTS,
ETC., AND LEFT THERE.

7.   THE NEXT MORNING THE BOX IS SORTED AND THE LEGAL DOCUMENT PACKAGE IS THEN
PLACED IN THE INSTITUTIONAL MAILBOX FOR  THE TREATMENT DEPARTMENT SECRETARY (MS.
SHAW), WHO IS THE "DESIGNEE BY DEFENDANT WILLIS", TO PERFORM LEGAL COPY SERVICES.

8.   THE TREATMENT DEPARTMENT SECRETARY RECEIVES THE LEGAL COPY REQUEST AND  DOCUMENTS
AND IS TO VERIFY THE  AMOUNT ON THE WITHDRAWAL CORRESPONDS WITH THE COPY REQUEST.
THE SECRETARY THEN FORWARDS THE REQUEST TO THE BUSINESS OFFICE FOR THE PROCESSING
OF THE MONEY WITHDRAWAL REQUEST.  ONCE THE BUSINESS OFFICE APPROVES AND  VERIFIES
THE AVAILABLE FUNDS TO PAY FOR THE LEGAL COPIES, THE REQUEST IS SIGNED-OFF UPON
AND FORWARDED BACK TO THE TREATMENT DEPARTMENT SECRETARY.

9.   WHEN THE TREATMENT DEPARTMENT SECRETARY RECEIVES THE ABOVE BACK FROM THE BUSINESS
OFFICE, SHE THEN  WILL MAKE THE REQUESTED LEGAL COPIES. UPON COMPLETION, THE COPIES
ARE PLACED WITH THE ORIGINALS INSIDE A MANILLA ENVELOPE AND SEALED.  THE SECRETARY
WRITES THE PRISONER'S NAME, NUMBER AND CELL ASSIGNMENT LOCATION ON THE ENVELOPE
(WITH A RETURN SENDER SIMPLY BEING "SHAW-TREATMENT") AND NOTES **NOWHERE** WHATSOEVER
ANYWHERE ON THE ENVELOPE  THAT THE CONTENT IS "LEGAL".

10.   THE COMPLETED/PROCESSED ENVELOPE IS THEN PLACED INSIDE AN INTERNAL INSTITUTIONAL

MAIL TUB TO BE SENT "OUTSIDE OF THE PRISON" TO AN EXTERNAL MAILROOM BUILDING.
(IT IS NOTED THAT THE MAILROOM IS IN FACT ON D.O.C. PROPERTY, BUT FOR AFORE PURPOSE,
IS OUTSIDE THE INSTITUTIONAL PERIMETER).

11. THE MAILROOM RECEIVES THAT MAIL AND SORTS SAME. THE ABOVE MANILLA ENVELOPE
IS THEN PLACED IN THE MAIL BAG DESIGNATED FOR THE HOUSING UNIT OF THE INTENDED
RECIPIENT. THE MAIL BAGS ARE THE DELIVERED BACK INSIDE THE INSTITUTION AND DROPPED-OFF
BACK AT THE WATCH COMMANDER'S OFFICE.

12. WHEN THE EVENING SHIFT (6:00 P.M.) ARRIVES, THAT HOUSING UNIT CORRECTIONAL
OFFICER ("C/O") PICKS THE MAIL BAG UP AND CARRIES IT TO THE UNIT. THE CONTENTS
ARE EMPTIED IN THE CONTROL ROOM, SORTED AND THEN DELIVERED TO THE PRISONERS. THE
RECIPIENT OF THESE LEGAL DOCUMENTS/COPIES DOES NOT SIGN FOR THE DOCUMENTS/COPIES
NOR DOES HE HAVE ANY WAY TO DISPUTE ANY INACCURACIES OR DISCREPANCIES WITH HIS
COPIES. (I.E. COPIES MISSING/ORIGINALS MISSING/UNABLE TO CLEARLY READ COPY, ETC.).
ADDITIONALLY, IN DIRECT VIOLATION OF RELEVANT DEPARTMENTAL POLICIES WHICH REQUIRE
THE OFFICER ISSUING MAIL TO THE INMATE TO REQUIRE PRODUCTION OF IDENTIFICATION,
THIS IS SELDOM ENFORCED; IF AT ALL. HENCE, THE DOOR IS OPEN FOR THE INCORRECT
RECIPIENT TO COME INTO POSSESSION OF ANOTHER'S LEGAL COPIES.

13. PLAINTIFF INITIALLY CHALLENGED THE CONSTITUTIONALITY OF THIS POLICY/PROCEDURE
CIRCA MAY 2010. ON MAY 6, 2010, PLAINTIFF SUBMITTED A REQUEST FORM TO HIS
REHABILITATIVE COUNSELOR R.L. PARMENTER, JR., (EXHIBIT #6) AND TREATMENT SECRETARY
MS SHAW (EXHIBIT #6) ADVISING THAT HE WAS "IN RECEIPT OF SOME LEGAL DOCUMENTS FROM
HIS ATTORNEY'S FILE OF WHICH HE WILL BE FILING TO THE COURT." PLAINTIFF SET FORTH
THAT THE DOCUMENTS, AS HE SIGNED FOR THEM VIA "LEGAL MAIL," ARE "PROTECTED BY ATTORNEY/
CLIENT PRIVILEGE AND CONTAIN SENSITIVE INFORMATION 'FOR LIMITED OFFICIAL USE'"
AND WAS IN NEED OF A COPY MADE. COUNSELOR PARMENTER ADVISED TO FOLLOW THE
INSTRUCTIONS OF TREATMENT SECRETARY SHAW, WHO IN TURN REFERRED PLAINTIFF TO POLICY

AND INSTRUCTED THAT HE "SEND THE FORM ALONG WITH THE PAPERWORK YOU WANT COPIED."
(EXHIBIT #6).


14.    DISSATISFIED WITH THE ABOVE INVASION OF RIGHTS, PLAINTIFF FILED AN INFORMAL
COMPLAINT TO TREATMENT PROGRAM SUPERRVISOR/DEFENDANT E. WILLIS, SETTING FORTH
THAT THE CODE OF FEDERAL REGULATIONS GOVERNS INCOMING LEGAL MAIL IN PRISONS; INASMUCH
AS BEING IDENTIFIABLE AS CONTENTS FROM AN ATTORNEY OR COURT, AND THE CONFIDENTIALITY
THAT ATTACHES. PLAINTIFF FURTHER SET FORTH THE D.O.C.'S OWN OPERATING PROCEDURE
(803.1(III)(IV)(A)(6)(F)) WITHIN WHICH DEFINES LEGAL CORRESPONDENCE/LEGAL MAIL
AND PROHIBITION FROM READING/SCREENING SAME. (EXHIBIT #6)(INFORMAL COMPLAINT NO.
220-10-INF-01254)(5/17/2010). DEFENDANT E. WILLIS REPLIED SIMPLY: "I DO NOT HAVE
A FEDERAL REQUIREMENT THAT AN OFFENDER HAS TO BE PRESENT WHEN COPIES ARE MADE."


15.    ON MAY 24, 2010, PLAINTIFF LODGED HIS LEVEL I GRIEVANCE. THE GRIEVANCE WAS
"UNFOUNDED", DETERMINING STAFF WAS FOLLOWING THE PROCEDURE FOR OBTAINING LEGAL
COPIES. THIS WAS UPHELD ON APPEAL JULY 1, 2010. (EXHIBIT #6).


16.    ON JANUARY 7, 2011, PLAINTIFF AGAIN LODGED HIS GRIEVANCE TO THE PROCEDURE,
TO-WIT: ON DECEMBER 30, 2010, $19.50 WAS DEDUCTED FROM [HIS] ACCOUNT TO PAY FOR
LEGAL COPIES NEEDED FOR HIS FEDERAL FILING. PLAINTIFF NEVER RECEIVED  HIS LEGAL
DOCUMENT ORIGINALS BACK, NOR HIS COPIES.  INFORMAL COMPLAINT NUMBER NCC-11-INF-00206
WAS FILED. ON JANUARY 19, 2011, DEFENDANT E. WILLIS ALLEGED HER SECRETARY MADE
THE COPIES AS SOON AS SHE RECEIVED APPROVAL FROM  THE ACCOUNTING DEPARTMENT. (EXHIBIT
#17). ON JANUARY 22, 2011, PLAINTIFF LODGED GRIEVANCE NUMBER NCC-11-REG-00069.
THIS GRIEVANCE WAS INVESTIGATED BY DEFENDANT A. JAMES AND "UNFOUNDED" BY SIGNATURE
OF WARDEN B. WATSON FEBRUARY 17, 2011. (EXHIBIT #17). ON FEBRUARY 18, 2011, PLAINTIFF
APPEALED. FOUR (4) DAYS LATER, ON FEBRUARY 22, 2011, PLAINTIFF'S ORIGINALS AND
COPIES WERE PROVIDED TO HIM.  ON MARCH 7, 2011, THE APPEAL OF THE GRIEVANCE WAS
"FOUNDED"; BY DEFENDANT A. BRYANT, CONCLUDING POLICY HAD NOT BEEN ADHERED TO AND

THAT A PERIOD FROM DECEMBER 30, 2010, UNTIL FEBRUARY 22, 2011 (53-DAYS) WAS CONSIDERED
AN "UNTIMELY MANNER." DEFENDANT **A. BRYANT** FURTHER STATED "APPROPRIATE ADMINISTRATIVE
ACTION HAS BEEN TAKEN TO ENSURE AN INCIDENT OF THIS NATURE DOES NOT HAPPEN AGAIN."
(EXHIBIT #17). THE DOCUMENTS LOST FOR ABOUT 53 DAYS INCLUDED "ORIGINAL" SWORN-TO
DOCUMENTS OF AFFIDAVITS OF RECANTMENT SUPPORTING PLAINTIFF'S ACTUAL INNOCENCE
IN HIS  CRIMINAL CONVICTIONS.


17.   ON MAY 10, 2011, PLAINTIFF SUBMITTED A REQUEST TO DEFENDANT **E.WILLIS**, ADVISING
HE HAD PRIVILEGED INFORMATION FROM COUNSEL OF WHICH HE DESIRED A COPY OF. THE
COMMUNICATION DISCUSSED "RETAINER INFORMATION, CASE STRATEGY, AND SUBJECT MATTERS
FOR POTENTIAL FILINGS IN THE CIRCUIT COURT" AND CAME TO PLAINTIFF VIA PRIVILEGED
LEGAL MAIL. PLAINTIFF ASKED IF DEFENDANT **E. WILLIS** COULD "ADVISE OF ANOTHER ROUTE"
FOR HIM TO OBTAIN THE COPIES "IN HIS PRESENCE." (EXHIBIT #21). DEFENDANT **E. WILLIS**
CLEARLY STATES "THERE ARE NO OTHER OPTIONS" THAN TO SURRENDER POSSESSION OF THE
DOCUMENTS FOR COPYING "OUTSIDE INMATE'S PRESENCE." (EXHIBIT #21).  ON MAY 20,
2011, PLAINTIFF LODGED HIS GRIEVANCE. THIS WAS INVESTIGATED BY DEFENDANT **A.   JAMES**
AND UNFOUNDED.  THE APPROVING SIGNATURE WAS THAT OF WARDEN B. WATSON ON JUNE 13,
2011.   PLAINTIFF APPEALED JUNE 14, 2011 AND DEFENDANT **A. BRYANT** UPHELD  THE CONCLUSION
THAT STAFF WAS FOLLOWING POLICY. (EXHIBIT #21).


18.   ON AUGUST 8, 2011, PLAINTIFF SUBMITTED (27) ORIGINAL LEGAL DOCUMENTS TO
BE COPIED X2 EACH AND $13.50 WAS DEDUCTED  FROM HIS ACCOUNT. THE COPIES WERE
NEEDED IN ORDER TO COMPLETE A HENRICO COUNTY CIRCUIT COURT FILING BEFORE THE DEADLINE.
ON AUGUST 11, 2011, OFFICER GRAY DELIVERED TO PLAINTIFF, VIA INSTITUTIONAL MAIL,
AN ENVELOPE FROM THE TREATMENT DEPARTMENT CONTAINING ONLY "ONE (1) COPY". IMMEDIATELY
COMPLAINT NUMBER NCC-11-INF-04248 WAS  LODGED, AS THIS AGAIN IMPEDED ACCESS TO
THE COURT. (EXHIBIT #29). DEFENDANT **E. WILLIS** REPLIED AUGUST 16, 2011 CLAIMING
THEY HAD NOT RECEIVED THE ORIGINALS. (EXHIBIT #29).  ON AUGUST 17. 2011, PLAINTIFF

LODGED GRIEVANCE NCC-11-REG-00537 SEEKING BOTH ACCOUNTABILITY AND CORRECTIVE ACTION.
ON AUGUST 19, 2011, GRIEVANCE COORDINATOR ALTERNATE N. MATTHEWS ATTEMPTED TO HAVE
PLAINTIFF WITHDRAWAL HIS GRIEVANCE. SHE MADE IT CLEAR THAT SHE WOULD RESPOND TO
THE GRIEVANCE NOT BY PLAINTIFF'S FACTS, BUT BY WHATEVER MS SHAW (TREATMENT SECRETARY)
PROVIDED HER. PLAINTIFF REFUSED TO WITHDRAWAL THE COMPLAINT AND DOCUMENT HER
ATTEMPT TO THE GRIEVANCE OFFICER; DEFENDANT **A.JAMES**. (EXHIBIT #29).

19.   ON SEPTEMBER 12, 2011, DEFENDANT **A. JAMES** CONCLUDED THERE EXISTED NO VIOLATION
OF POLICY AND ASSISTANT WARDEN JERRY R. TOWNSEND APPROVED. (EXHIBIT #29). PLAINTIFF
APPEALED ON SEPTEMBER 13, 2011, AND DEFENDANT **A. BRYANT** "**FOUNDED**" THE COMPLAINT,
CONCLUDING THAT "FURTHER INVESTIGATION CONFIRMED [YOU] ONLY RECEIVED ONE (1) COPY
AND AS A RESULT, SGT. GILLIAM MADE THE SECOND SET ..". "YOU ONLY RECEIVED (1)
COPY AND DOCUMENTATION SHOWS YOU PAID FOR (2)." "THIS WAS CONFIRMED BY THE SHIFT
SERGEANT." (EXHIBIT #29). CORRECTIVE ACTION WAS ORDERED.

20.   WITH DEFENDANTS **A. JAMES** AND  **A. BRYANT** BEING CHARGED WITH THE DUTIES TO
ENSURE COMPLIANCE WITH POLICIES AND ENFORCEMENT OF ANY "FOUNDED" NEED FOR "CORRECTIVE
ACTION", PLAINTIFF RESPECTFULLY INQUIRED TO DEFENDANT **A. JAMES** AS TO WHY THE ORDERED
CORRECTIVE ACTION WAS NEVER TAKEN AS FOUNDED; BEGINNING WITH GRIEVANCE NCC-11-REG-00069
(EXHIBIT #17), AND REPEATEDLY RECEIVED NONE OTHER THAN WHAT THE AVERAGE PERSON
CAN INTERPRET AS A RECOGNITION AND ADMITTANCE THAT ACTION WAS ORDERED TAKEN, BUT
HAD NOT BEEN TAKEN; TO-WIT:

   A) ON 2/24/2011 DEFENDANT **A. JAMES**  STATES "I WILL MAKE A  SUGGESTION
   TO TREATMENT ON THE PROCESS OF HOW LEGAL COPIES ARE TO BE MADE." (EXHIBIT
   #43).

   B) ON 3/28/2011 DEFENDANT **A. JAMES** STATES "ADMINISTRATIVE ACTION IS BEING
   TAKEN; HOWEVER IT DIDN'T STATE  A TIME FRAME. THE WARDEN IS FULLY AWARE
   AS TO WHAT IS GOING ON WITH LEGAL COPIES. I WILL PERSONALLY ADDRESS WITH
   HIM AGAIN. PLEASE BE PATIENT." (EXHIBIT #44).

   C) ON 5/16/2011 DEFENDANT **A. JAMES** STATES "I AM STILL WAITING ON THE WARDEN
   TO GET BACK WITH ME TO MAKE SURE THE CORRECTIONS HAVE BEEN MADE." (EXHIBIT
   #45).

D) ON 5/16/2011 DEFENDANT **A. JAMES** STATES "I AM STILL WAITING TO HEAR BACK FROM THE WARDEN." (EXHIBIT #46).

E) ON JULY 1, 2011 DEFENDANT **A. JAMES** STATES "ONCE THE WARDEN RETURNS, I WILL INQUIRE ABOUT THIS AND WILL INFORM YOU. SORRY FOR THE INCONVENIENCE." (EXHIBIT #47).

AS OF THIS CIVIL FILING, NO CORRECTIVE ACTION HAS BEEN TAKEN; NO REVISION OF THE POLICY HAS BEEN MADE; NO SYSTEM OF ACCOUNTABILITY, NOR HAS DEFENDANT **A. JAMES** EVEN RESPONDED BACK TO PLAINTIFF IN THIS REGARD; AND, ULTIMATELY, THE "PRACTICE" IS STILL IN EFFECT AND BEING EXECUTED.

21.   PLAINTIFF CLAIM THE OPERATING PROCEDURE BEING UTILIZED, ENFORCED AND SUPPORTED AT THE N.C.C. BY DEFENDANTS **J. TERRY, E. WILLIS** AND PERMITTED BY DEFENDANT **H. CLARKE** INDISPUTABLY VIOLATES PLAINTIFF'S FIRST, FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 8, OF THE VIRGINIA CONSTITUTION; TO UNFETTERED ACCESS TO THE COURTS, DUE PROCESS AND RIGHT TO PRIVILEGED COMMUNICATIONS WITH COUNSEL AND/OR THE COURTS. PLAINTIFF FURTHER ASSERTS THAT UNDER THE "CONTINUING VIOLATION THEORY" AND "CONTINUING CONSPIRACY THEORY" DEFENDANTS **A. JAMES** AND **A. BRYANT** ARE EQUALLY RESPONSIBLE AND LIABLE FOR THE DEPRIVATIONS; AS ALL THE DEFENDANTS COLLECTIVELY WERE PLACED NOT ONLY ON NOTICE OF THE UNCONSTITUTIONAL PRACTICES, BUT OF A MUCH GREATER MAGNITUDE WHOLLY FAILED AND NEGLECTED TO TAKE ANY ACTIONS WHATSOEVER TO TRANSPOSE THE VIOLATIONS AND DEPRIVATIONS; ESPECIALLY FROM THE MULTIPLE STAGES AT WHICH **"FOUNDED"** GRIEVANCES MANDATED CORRECTIVE ACTIONS. THERE WAS NO ONE (1) ISOLATED INCIDENT OR VIOLATION. IT OCCURRED MULTIPLE TIMES AND DEFENDANTS UNDOUBTEDLY MAINTAIN THE POSITION OF: "WE'VE BEEN DOING IT LIKE THIS FOR OVER (10) YEARS NOW AND NOT GONNA CHANGE IT FOR ONE INMATE." (QUOTING VERBATIM DEFENDANT **E. WILLIS**).

22.   THE "(T)RADITIONALLY ... BROAD HANDS-OFF ATTITUDE (OF FEDERAL COURTS) TOWARD PROBLEMS OF PRISON ADMINISTRATION" EXPLAINED BY MR. JUSTICE POWELL IN <u>PROCUNIER</u>

V. MARTINEZ, 416 U.S. 396, 404-406, HAS AN EQUALLY VIGOROUS COMPANION PRINCIPLE.
WE ARE INSTRUCTED THAT WHEN A "PRISON REGULATION OR PRACTICE OFFENDS A FUNDAMENTAL
CONSTITUTIONAL GUARANTEE, FEDERAL COURTS WILL DISCHARGE THEIR DUTY TO PROTECT
CONSTITUTIONAL RIGHTS. ID., CITING JOHNSON V. AVERY, 393 U.S. 483, 486 (1969).


23.   THE PHENOMENON OF CENSORSHIP, OF COURSE, APPEARS IN A MULTITUDE OF FORMS.
ITS ESSENCE IS "INTERFERENCE WITH ... INTENDED COMMUNICATION." SEE MARTINEZ, 416
U.S. AT 408-409. THE PRACTICES OF CENSORSHIP MAY EQUALLY INVOLVE DIRECT OR INDIRECT
INTERFERENCE. ALTHOUGH UNDERLYING THE CLAIM WE CONFRONT MORE IN THIS CASE THAN
ABRIDGEMENTS OF FIRST AMENDMENT RIGHTS, FREEDOM FROM ANY INDIRECT FORM OF
CENSORSHIP IS THE ESSENTIAL RELIEF THAT THE PLAINTIFF SEEKS.


24.   THE PRIMARY INTERESTS OF CONVICTED PRISONERS, AS WELL AS OF PRETRIAL DETAINEES,
IN CORRESPONDING WITH COURTS, PROSECUTING ATTORNEYS, PROBATION OFFICERS, AND LAWYERS
ARE OBVIOUS. THEY MAY WISH TO CHALLENGE  THEIR CONVICTIONS, ADVANCE THE TIMING
AND  TERMS OF THEIR RELEASE FROM CONFINEMENT, REFORM PRISON CONDITIONS, OR CONDUCT
OR ASSIST IN THE PREPARATION OF THE DEFENSES.  THE NATURE OF THESE INTERESTS AS
IS CONCERNED BY THE DISTRICT COURT, IS TO SAFEGUARD A PRISONER'S ACCESS TO THE
COURTS. THIS EMPHASIS PERHAPS REFLECTS THE RECURRENT JUDICIAL ATTITUDE THAT THE
RIGHT OF ACCESS TO  THE COURTS IS AFFORDED SPECIAL PROTECTION. SEE MCCRAY V.
SULLIVAN, 509 F.2D 1332 (1975); EISENHARDT V. BRITTON, 478 F.2D 855 (1973) AND
SCHACK V. WAINWRIGHT, 391 F.2D 608, CERT. DENIED, 1968, 392 U.S. 915. THE 5TH
CIRCUIT  U.S. DISTRICT COURT RECOGNIZED IN MCCRAY THAT "'(A)N INMATES'S RIGHT
OF UNFETTERED ACCESS TO THE COURTS IS AS FUNDAMENTAL A RIGHT AS ANY OTHER HE MAY
HOLD ... ALL OTHER RIGHTS OF AN INMATE ARE ILLUSORY WITHOUT IT ...'" 509 F.2D
AT 1337, CITING ADAMS V. CARLSON, 488 F.2D 619, 630 (1973).  IN CARLSON,  THE
SEVENTH CIRCUIT UPHELD A CHALLENGE TO A REQUIREMENT THAT IN A PRISON VISITING
ROOM LAWYERS MEETING WITH PRISONER-CLIENTS TRANSMIT DOCUMENTS AND OTHER WRITTEN
MATERIAL TO PRISONERS POSITIONED ON THE OTHER SIDE OF A GLASS PARTITION ONLY THROUGH

PRISON GUARDS WHO HAD TEMPORARY BUT UNOBSERVED POSSESSION OF THESE MATERIALS. THIS ARRANGEMENT PLACED AN IMPERMISSIBLE BURDEN ON THE PROCESS OF CONSULTATION BETWEEN ATTORNEYS AND THEIR CLIENTS.

25. IN A LATER CASE, BACH V. ILLINOIS, 504 F.2D 1100, 1102 (1974) THE COURT HELD THAT AN INMATE IS ENTITLED TO BE PRESENT DURING THE OPENING OF HIS LEGAL MAIL. THE INSPECTION OF THIS COMMUNICATION OUTSIDE OF THE PRISONER'S PRESENCE WOULD DILUTE PRIVATE ATTORNEY-CLIENT COMMUNICATIONS VITAL TO THE EFFECTIVE ASSISTANCE OF COUNSEL AND ACCESS TO THE COURTS. SEE SMITH V. ROBBINS, 328 F.SUPP. 162, 164-165 (S.D.ME. 1971), AFF'D IN PERT. PART., 1 CIR. 1972, 454 F. 2D 696.

26. A PERTINENT EXAMPLE OF THE POTENCY OF THE RIGHT OF ACCESS TO THE COURTS IS FOUND IN THE U.S. SUPREME COURTS TREATMENT OF PRISON REGULATIONS PROSCRIBING PRISONER ACCESS TO ATTORNEY LEGAL ASSISTANTS IN MARTINEZ. THE COURT FIRST EXPLAINED THE STATUS OF THE RIGHT OF ACCESS TO COURTS AS A COROLLARY OF THE CONSTITUTIONAL GUARANTEE OF DUE PROCESS OF LAW. 416 U.S. AT 419; SEE JOHNSON V. AVERY, 393 U.S. 483 (1969); EX PARTE HULL, 312 U.S. 546 (1941). (NOTING THE SUPREME COURT HAS ALSO VIEWED THE RIGHT OF ACCESS TO THE COURTS AS ONE ASPECT OF THE FIRST AMENDMENT RIGHT TO PETITION. CALIFORNIA MOTOR TRANSPORT CO. V. TRUCKING UNLIMITED, 1975, 404 U.S. 508, 510).

27. CONSIDERING ANY INFRINGEMENT OF THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY THE DIRECT OR INDIRECT SCREENING OF PRISONER COMMUNICATIONS IS CONCLUDED WITHIN A CONCURRENT ABRIDGEMENT OF THE RIGHT OF ACCESS TO THE COURTS; ULTIMATELY HINDERING DUE PROCESS OF THE LAWS, IT IS UNNECESSARY TO CONSIDER THE CLAIMS SEPERATELY.

28. DEFENDANTS MANDATORY REQUIREMENT THAT ALL PRISONERS MUST RELINQUISH POSSESSION OF ANY LEGAL DOCUMENTS IN NEED OF COPYING, FOR A MINIMUM PERIOD OF AT LEAST (10) WORKING DAYS PRIOR TO DATE OF NEED, INTO THE MULTIPLE UNACCOUNTABLE HANDS OF SEVERAL

PRISON OFFICIALS AND VIA INSTITUTIONAL MAILINGS; "OUTSIDE THE PRISONER'S PRESENCE"
FOR THE ENTIRE TIME FRAME MENTIONED, TO ALLOW ANY DIRECT OR INDIRECT SCREENING
OF ANY CIVIL LITIGATIONS (INCLUDING THIS INSTANT PETITION); APPEALS OF CONVICTIONS;
HABEAS CORPUS'; ACTUAL INNOCENCE WRITS; PAROLE APPEALS; GUBERNATORIAL PARDON PETITIONS
OR EVEN SUBMITTANCE OF DOCUMENTS TO THE LAW UNIVERSITY INNOCENCE CLINICS IS NOTHING
SHY OF DIRECT VIOLATIONS OF PLAINTIFF'S FIRST, FIFTH, SIXTH AND FOURTEENTH AMENDMENT
RIGHTS TO THE UNITED STATES CONSTITUTION. THE LOSS OF PLAINTIFF'S LEGAL DOCUMENTS
FOR THE ABOVE MENTIONED **(53) DAY TIME PERIOD** (SEE ¶16) FOR WHICH THE DOCUMENTS
WERE WITHHELD OUTSIDE HIS PRESENCE WARRANTED A CONCLUSIVE **"FOUNDED"** COMPLAINT
CALLING FOR ADMINISTRATIVE CORRECTIVE ACTION. THE FAILURES OF DEFENDANTS TO IMPLEMENT
SUCH CORRECTIVE ACTIONS ALLOWED FOR THE CONTINUING CONSTITUTIONAL VIOLATIONS AND
CONTINUING INJURY TO PLAINTIFF.

29.   THE POLICY/PRACTICE/OPERATING PROCEDURE, TO SAY THE LEAST, IS ON ITS FACE
UNCONSTITUTIONAL. LEGAL DOCUMENTS SHALL BE DUPLICATED "IN THE INMATE'S PRESENCE"
AND THE INMATE SHALL NEVER BE REQUIRED TO RELINQUISH POSSESSION TO PRISON AUTHORITIES
FOR SCREENING. THERE IS  NO SYSTEM ALLOWING FOR ACCOUNTABILITY OF ANY NEGLIGENCE
IN REGARDS TO HANDLING OF INMATE LEGAL FILINGS AND OBVIOUSLY EXISTS A LACKING
INTEREST OR CONCERN ON BEHALF OF DEFENDANTS TO TRANSPOSE THESE UNCONSTITUTIONAL
PRACTICES.

30.   PLAINTIFF DOES NOT SEEK ANY MONETARY DAMAGES FROM ANY DEFENDANT UPON THIS
CLAIM OUTSIDE OF REIMBURSEMENT OF COSTS AND FEES FOR HAVING TO BRING THIS ACTION.
PLAINTIFF ONLY SEEKS A PROHIBITORY, PREVENTIVE AND MANDATORY INJUNCTION FINDING
THE OPERATING PROCEDURE AND ACTIONS BY DEFENDANTS UNCONSTITUTIONAL AND ORDER
DEFENDANTS TO CEASE AND DESIST SUCH PRACTICES; WITH DIRECTIONS TO REVISE THE
OPERATING PROCEDURE MANDATING LEGAL COPIES BE MADE IN THE PRESENCE OF THE INMATE.

CLAIM TWO:

(COMMON TO ALL DEFENDANTS)

PLAINTIFF'S RIGHTS GUARANTEED HIM BY THE FIRST,
FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION AND ARTICLE I, SECTION 8 OF
THE VIRGINIA CONSTITUTION HAVE BEEN VIOLATED,
TO-WIT:

"FACT-SPECIFIC TO THIS CLAIM, PLAINTIFF WAS DENIED
MEANINGFUL AND REASONABLE ACCESS TO THE PRISON
LAW LIBRARY; THE PRISON LAW LIBRARY WAS FOUNDED
TO BE NON-COMPLIANT WITH CONSTITUTIONAL
STANDARDS REQUIRING CURRENT RESEARCH MATERIALS;
PLAINTIFF SUFFERED ACTUAL INJURY FROM THE DENIAL
OF ACCESS TO THE COURTS BY DISMISSAL OF A NON-
FRIVOLOUS LEGAL CLAIM DIRECTLY RESULTING
THEREFROM."

31.   Ready access to the courts is a "Fundamental Constitutional Right". Bounds v. Smith,

430 U.S. at 828. Regulations and Practices that unjustifiably obstruct such access are

invalid. Procunier v. Martinez, 416 U.S. at 419. Access to courts entails not only

freedom to file pleadings but also freedom to employ, without retaliation or harassment,

Campbell v. Beto, 460 F.2d 765, 768 (1972), those accessories without which legal

claims cannot be affectively asserted; a law library containing basic legal materials; legal

assistance both from lawyers and from other inmates; and the ability to communicate

with courts, attorneys and public officials. Ruiz v. Estelle, 679 F.2d 1115, 1153-54

(1982). Also see Bounds, supra, at 825-28.

32. The evidence will show a persistent pattern of N.C.C. interference with attempts by inmates to pursue legal actions. Although the disruption is not uniform throughout the Virginia Department of Corrections, "(P)ractices and Policies [at the N.C.C.] significantly restrict the times and places inmates may work on legal matters; severely inhibit communication among inmates about legal matters, encumber inmate efforts to have legal papers notarized, encourage the discriminatory harassment of inmates who take their grievences to court, and intrude on the communication between attorneys and their clients. Ruiz, at 1153-54. It remains utterly impossible that any of these burdensome practices and policies serve to advance legitimate institutional security goals.

33. This claim is based on the First, Fifth and Fourteenth Amendments to the United States Constitution. Under the First Amendment, Plaintiff has the right to "petition the government for redress of grievances", and under the Fifth and Fourteenth Amendments, Plaintiff has the right to "due process of law". Put together, these provisions mean the Plaintiff must have the opportunity to go to court if he thinks his rights have been violated. The right to access the courts includes the right to (1) file legal papers, and to communicate freely about legal matters with the courts, lawyers, and magistrates, (2) reasonable access to the up-to-date/current law books and research materials; (3) obtain legal help from other prisoners or help other prisoners, and (4) be free from retaliation based on legal activity.

34. The U.S. Supreme Court changed the ruling of their 1977 decision of <u>Bounds v. Smith</u>, (430 U.S. 817) in 1996; when deciding <u>Lewis v. Casey</u>, (518 U.S. 343). In this ruling, the court held that prisoners have to (A) show an "actual injury" and (B) the existence of a "non-frivolous legal claim" to prevail upon an access to the courts case; although courts do not agree on exactly what constitutes "actual injury" and is not yet clear whether a Plaintiff need show actual injury if prison officials have actually "interfered with" your right of access.

35. In effort to satisfy the above....two (2) requisite elements (per se) Plaintiff respectfully asserts:

> (A) Plaintiff suffered "actual injury" on January 28, 2011 when Honorable Gary A. Hicks, Henrico County Circuit Court Judge, dismissed his complaint with prejudice, for no other reason than failure to timely file; a fault not of Plaintiff's. (Exhibit #60)

> (B) Plaintiff undoubtedly declares he in fact was attempting to prosecute a "non-frivolous" legal claim, as the claim sought prayer in Plaintiff's favor for injury in the form of having been sexually abused by his family's Catholic Priest (Exhibit #58); claims of which were indisputably supported by a licensed Chief Psychologist who had concluded Plaintiff "has a long history of childhood abuse resulting in long-term psychological pain..." (Exhibit #59).

36. Plaintiff's afore claim was "filed" in the Henrico Circuit Court on October 12, 2010 as Case no. CL10-2989 (Exhibit #58). This was the result of having originally met with N.C.C. Institutional Chaplain Michael Rowland and Special Agent David Ragland of the VA D.O.C.'s Inspector General's Office; March 2010. (Plaintiff notes for this court that the "date of expiration" to file his civil claims noted by Judge Hicks was April 29, 2010).

From the March meetings, it is seemingly obvious a continued campaign of harassment

and interference began upon Plaintiff. Plaintiff only assumes this was due to his having

embarrassed the VA D.O.C. by substantiating the fact this same Catholic Priest was

allowed to enter D.O.C. facilities as a visitor subsequent to abuse. Nevertheless,

defendants began to impede. block and interfere with Plaintiff's access to the institutional

law library for purpose of prosecuting the claim, as stated:

(A) On 3/23/2010 Plaintiff filed a regular grievance for
having waited over 15 days from request to access the law
library, when so many empty seats existed. On 3/25/2010,
acting grievance coordinator Tammee Ortiz was instructed to
"reject" the grievance as "does not affect you" and this decision
was upheld by defendant **A. Bryant** (Exhibit #61); despite the
fact Plaintiff refers to himself personally within the grievance
as "I" and "my" at least six (6) times.

(B) On 4/23/2010 Plaintiff filed grievance no. 220-10-REG-00084
setting forth denial/delayed access to the law library, as the law
library is being opened 15-20 late and allowed to close earlier
than scheduled by approximately 20-30 minutes; of which was
ruled "unfounded" by defendants; (Exhibit #4), however, noted
and admitted the law library was being allowed to close
earlier than it should.

(C) On 4/23/10, Plaintiff filed emergency grievance no. 045979
in attempt to obtain access to the law library setting forth a verified
filing deadline and was denied (Exhibit #5).

(D) On 4/30/2010, Plaintiff filed regular grievance for having to
wait over two (2) weeks from request to access the law library.
On 5/3/2010, acting grievance coordinator Ortiz was instructed to
"reject" the grievance as "does not affect you personally" and on
5/13/2010 defendant **A. Bryant** refused the appeal as "untimely";
despite the fact Plaintiff refers to himself personally within the
grievance as "I", "Me" and "My" at least twelve (12) times (Exhibit
#62) and despite the fact Plaintiff supported his "timely appellate
filing". (Exhibit #63).

And, although more instances of having to lodge complaints during 2010 for same denial

of access (which will be addressed in a separate claim) Plaintiff will point out for this

instant claim that:

> (E) Even in December 2010, acting grievance coordinator Ortiz
> "FOUNDED" grievance no. NCC-10-REG-00002 (12/2/2010)
> setting forth that her investigation concluded staff was not in
> compliance with O.P. 866.3 (legal services) (Exhibit #67)  however,
> Assistant Warden Jerry Townsend directed Mrs.Ortiz in his own
> handwriting to change the "founded" to "unfounded" and then
> he signed it (12/3/2010). (Exhibit #67).  Plaintiff did not discover
> the "conspiracy to cover up" until July 2011 during a review of his
> grievance file with defendant A. James; at which time Plaintiff
> forwarded it to Central Regional Grievance Office Ombudsman
> defendant A. Bryant for administrative review; who rejected
> the notice simply as "expired filing period". (Exhibit #67).

37.  Lastly, Plaintiff's 12/29/2010 filing of grievance no. NCC-10-REG-00006 was upon his

discovery that, not only were numerous pages torn and missing from the Code of Virginia

law books, but the computer data base  placed in the law library on the inmate aide's

desk had a data base that had not been "updated" for at least 6-8 months; whereby

making absolutely no recent or up-to-date research materials available.  (The institution

discontinued the purchasing of law books/research manuals upon their purchase of the

computer agreement with Lexis-Nexis. Therefore, if the computer is not up-to-date or

current, there exists no current information at all).  This grievance was *FOUNDED*

(Exhibit #16) and it was held the investigation concluded:

> "The institutional law library was, at a
> minimum, to possess and maintain 'relevant
> and up-to-date constitutional statutory, and
> case law materials; applicable court rules and
> practice treaties' and was 'out of compliance.'"

It was noted that the computer data base was updated (as a result) on January 12, 2011.

38.  It would therefore be assertion of Plaintiff that the self-admitted "non-compliance" and

maintaining of "out-of-date law materials" in the law library by defendants, denied him

meaningful access to the courts, as Plaintiff not only foremost had absolutely positively

no available current materials accessible to him of which would have indicated for him

any such statutory filing periods within which to have his claim filed in this regard above

and undoubtedly Plaintiff suffered irreparable actual injury by the "dismissed with

prejudice" order of the Judge.

39.  Additionally, having suffered such injury, plaintiff asserts that he undoubtedly was

attempting to file a "meritorious and non-frivolous" litigation. In Civil Law, unlike that

of Criminal Law, the trier of fact reaches conclusion based upon "preponderance of

evidence"; not "reasonable doubt". The responding defendant in petitioner's 2010

Henrico Circuit Court filing claiming sexual abuse claimed no defense outside of "denial

of allegations"; whereas Plaintiff not only made his claims but (A) subpoenaed

accounting records proving that defendant made several deposits into Plaintiff's account

as "hush money"; (B) subpoenaed both the Chaplain to who/with the original connection

was made and the Special Agent to whom Plaintiff surrendered contraband that defendant

smuggled into the prison; (C) subpoenaed transcripts from Plaintiff's sentencing hearing

at which that defendant gave testimony regarding dates, times and locations of which

coincided with Plaintiff's claims, and (D) the professional findings of a licensed clinical

psychologist as to the sufferings of Plaintiff as a result of the abuse.  Upon presentment,

that was a non-frivolous prima facie legal claim.

40.    Accordingly, Plaintiff claims wanton negligence and wanton misconduct upon

defendants      **J. Terry, E. Willis** and **H. Clarke** for the violations of Plaintiff's First,

Fifth and  Fourteenth Amendment rights to the U.S. Constitution and, best defined as

"Quasi Tort Liability" upon defendants **A. James** and **A. Bryant**; though not a

recognized term of English law, may be used in the case where a defendant who has not

committed a tort, is liable as if they had; especially in this case of fact-specifically for

conspiring to continue the deprivations and violations once noticed of such existence and

failing to take any actions whatsoever in effort to transpose the constitutional acts.

41.   Plaintiff foremost seeks compensatory damages in the amount of $1.00 upon all defendants

in addition to irreparable damages in the amount of $1.00 upon all defendants for

mental anguish Plaintiff suffered having to repeatedly "re-live" his "childhood

sexual abuse history" for interviews with the institutional chaplain; institutional

psychologist; VA D.O.C. special agent from Inspector General's office; Henrico

County Police Detectives; VA State Police agents and representatives from the

Catholic Diocese of Richmond; and all cooperation provided both institutional

authorities regarding institutional visits and law enforcement in regards to both the

abuse and the Catholic priest; only to have the defendants conspire to deny access

to the courts for Plaintiff to seek judicial relief and compensation in attempt to

prevent their own negligent actions from being disclosed; as well as the daily

reminder to Plaintiff of the feelings of embarrassment from all named parties...

"knowing" the explicit details of the abuse he suffered throughout childhood and

early adulthood; prohibitory, preventive and mandatory injunctive relief and any

costs/fees for bringing this Section 1983 action upon defendants- with any

additional and. further relief the court deems appropriate and necessary.


**NOTE: EVEN FOR THE PURPOSE OF TRYING TO COMPLETE THIS INSTANT FILING, PLAINTIFF PROPERLY NOTIFIED DEFENDANTS ON FEBRUARY 15, 2012 THAT HE NEEDED TO COMPLETE THE INSTANT FILING FOR WHICH HE HAS A DEADLINE AND AFTER HAVING WAITED * 24 * DAYS WITHOUT HAVING TO BE ALLOWED ACCESS TO THE LAW LIBRARY PLAINTIFF AGAIN HAD TO FILE A GRIEVANCE. (EXHIBIT #81).**


**CLAIM THREE:**

**(COMMON TO ALL DEFENDANTS)**


**PLAINTIFF'S RIGHTS GUARANTEED HIM BY THE FIRST, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 8 OF THE VIRGINIA CONSTITUTION HAVE BEEN VIOLATED; TO-WIT:**

**"PLAINTIFF WAS DENIED ACCESS TO THE COURTS BY WAY OF DENIAL OF MEANINGFUL ACCESS TO THE PRISON LAW LIBRARY; THE PRISON LAW LIBRARY WAS FOUNDED TO BE NON-COMPLIANT WITH CONSTITUTIONAL STANDARDS REQUIRING AT A MINIMUM RELEVANT AND UP-TO-DATE CONSTITUTIONAL STATUTORY, AND CASE LAW MATERIALS, APPLICABLE**

**COURT RULES, AND PRACTICE TRIETIES: AS WELL
AS DENIAL OF/DELAYED ACCESS TO THE COURTS
INASMUCH AS GENERAL LEGAL SERVICES."**

42.    It is foremost noted that this claim is a sister-claim/companion-claim to claim two and

Plaintiff respectfully adopts and incorporates paragraphs 31–41 herein for argument with

this claim.


43.    It is now established beyond doubt that prisoners have a Constitutional right of access to

the courts.  The U.S. Supreme Court recognized that right more than 70 years ago

when it struck down a regulation prohibiting state prisoners from filing petitions for

habeas corpus unless they were found "properly drawn by the legal investigator"

for the parole board.  Ex Parte Hull, 312 U.S. 549 (1941).  The court held that this

violated the principle that "the state and its officers may not abridge or impair

petitioner's right to apply to a federal court for a writ of habeas corpus." Id, at 549.

See also Cochran v. Kansas, 316 U.S. 255 (1942).  The court in Johnson v. Avery,

393 U.S. 483 (1969), struck down a regulation prohibiting prisoners from assisting

each other with habeas corpus applications and other legal matters.  In Bounds v.

Smith, 430 U.S. 817 (1977), the court stressed "meaningful" access to the courts as

a "touchstone", Id., at 823:


**"[T]he fundamental Constitutional right of access to the**

**courts requires prison authorities to assist inmates in the**

**preparation and filing of meaningful legal papers by**

<u>**providing prisoners with 'adequate' law libraries or**</u>

<u>**'adequate' assistance from "persons _trained_ in the law'"**</u>

<u>**(emphasis added).**</u>

44.   The afore is parallel to Plaintiff's claims. First, Arguendo, Plaintiff addresses for this court the subject matter of "<u>**adequate law library**</u>".

(A) On 12/14/2010, Plaintiff accessed the law library on a verified deadline basis, authorized by defendant **E. Willis**. Plaintiff was attempting to review and research two (2) case laws of which the U.S. District Court cited (in their order) in Plaintiff's federal habeas corpus filing. This was in effort to lodge any rehearing or appeal. The first case cite was a 2009 case of <u>United States v. Green</u>, and the second was the January 2010 case of <u>Porter v. McCollum</u>.

(B) As the informal complaint (no. NCC-10-INF-00766 (Exhibit #16)) clearly states, on the 12/14/2010 day of access by Plaintiff, the law computer in the library had <u>no</u> 2010 cases, for the whole year, updated in the system. Defendant **E. Willis'** response was "I have contacted Lexis-Nexis to assist with locating problem with the available information." (Exhibit #16). Based on the fact the institution discontinued purchasing "books" at the point of purchasing the computer unit; and the computer database not current nor updated, Plaintiff was not able to access <u>ANY</u> current research materials to respond in his habeas corpus case. On 12/29/2010 Plaintiff filed his grievance and defendant **A. James** claimed no violation of policy.

(C) On 2/10/2011 however, (on appeal) the Regional Director **\* FOUNDED \*** the complaint (overturning defendant **A. James'** above finding) concluding upon investigation the institutional law library was "non-compliant" with the "minimum requisite to maintain relevant and up-to-date constitutional statutory, and case law materials, applicable court rules and practice treaties. (Exhibit #16). It was alleged corrections action took place on 1/12/2011 by the updating of the computer information.

(D) On 3/8/2011 Plaintiff attempted to access the law library to research the 2011 case of <u>Commonwealth v. Morris</u>, as was cited by the Attorney General's office in his newly

discovered evidence claim.  On this date however the computer information had only been updated current through 8/31/2010 and no information subsequent to this date was available.  On 3/18/2011 Plaintiff filed his grievance. On 3/28/2011 defendant **J. Terry** called Plaintiff to her office to explain that "the error was due to one of her library aides having done something to cause certain areas of the computer to be 'locked out', but it was [now] fixed." Defendant **J. Terry** further claimed she "was a bit upset herself, as she discovered quite by accident that her library aide had obviously installed, without permission nor her knowledge, non-legal related programs on the computer such as Excel, Art Gallery, Etc...,and no program other than the Lexis-Nexis programs are to be on that computer." On 4/12/2011 defendant **A. James** unfounded the complaint and she was told by the library aide the system was current as of January 2011; rather than conduct her own independent investigation. (Exhibit #19).

(E) On 8/8/2011 it was *FOUNDED* that the law library was "non-compliant" and this was upheld on appeal 8/30/2011. The "inmate clerk generated" legal forms dispensed incorrect legal advice regarding which state court direct appeals shall be fixed in. (Jurisdiction) (Exhibit #26).

(F) On 8/30/2011 it was *FOUNDED* that the law library was "non-compliant" in a separate complaint and this was upheld on appeal 9/12/2011. The "inmate clerk generated" legal forms being issued from the law library contained inaccurate legal information involving state statutes and court addresses. (Exhibit #25).

(G) Plaintiff advised he had three (3) days remaining on his federal deadline and needed "notary service/legal copies/ and legal postage withdrawals processed", but defendant **E. Willis** responded to this complaint never once acknowledging, let alone addressing, the issues. (Exhibit #9)

(H) When a prisoner does properly request the service of a notary public, as Plaintiff did 5/25/2011, it can take up to 2 weeks to obtain this service; as it did Plaintiff. (Exhibit #73).

(I) If a prisoner requests to see, and is referred to the institutional attorney; and case materials are requested, it takes at least 10 days to obtain these requested materials. (Exhibit #74). Is   noted that there exists only one (1) part-time institutional attorney for both the Correctional Center and the Work Center, with a 1300+ population.

(J) Accordingly, when assessing the "adequacy" of the institutional law library at N.C.C., it stands indisputable that the library itself has been *FOUNDED* to be '**non-compliant**" by its own institutional reviewing grievance process on, at the least, six (6) occasions. (Exhibit #14, 16, 17, 25, 26 & 29). There exists nothing further to truly

say. Plaintiff has provided nine (9) sworn to affidavits from prisoners experiencing the exact same issues related. (Exhibits #51, 52, 53, 54, 55, 56, 57, 77 & 78).

45. Secondly, Plaintiff will address for this court the subject-matter of "adequate" assistance from persons "trained in the law".

(A) Operating procedure 866.3 (IV)(H)(5), page 5 of 9, clearly stipulates "...clerks shall be hired/selected in accordance with policy and 'shall be trained' as library assistants." (Noting the word "shall" is mandatory language).

(B) The mandate that the clerks "shall be trained" is laughable at best. The majority of research materials (and ALL current) is generated via computer data base by subscription to Lexis-Nexis. Any "experienced" law program user knows that one of the things a person shall understand about the Lexis system is that it does not do any thinking; it just carries out your request exactly as you put it in. You have to understand what it understands from your information. It is basically a word system, so the user has to understand what it understands to be a word.

(C) The many structures of a computerized tool of legal research are vast. You have concordia, libraries, words, connections, segment searches, case citations by name, case citations by number, library-file selections, modification, display and print-by-selections. All of which are vital tools to learn and know in order to effectively research.

(D) Defendants have not, in any way, shape or form, provided any direct nor indirect, professional or unprofessional, training to any law library clerk/aide for the purpose of effective utilization of the computer research system. It's easy for an inmate to tell his prospective supervisor he has all the degrees from colleges, etc., but if hired based solely upon his "words", it becomes difficult to expect production from a person when you yourself are not trained nor experienced in the field for which you would be attempting to qualify the applicant for. That clearly is a case of "the blind leading the blind". This is absolutely significant inasmuch as facts surrounding this subject. The institution only has one (1) computer in the law library. This is the computer on which the only "current" legal research materials are stored. This computer is strategically placed on a desk, behind a counter barrier, accessible only to the law clerk and with the monitor facing only the direction of the law clerk's view. Essentially, personal to the clerk only and not accessible to patrons.

(E) If a patron does not know specifically what case or materials he is in need of for research, he must depend on the clerk. If the clerk is not effectively trained for these programs, he cannot provide said materials to patrons accordingly, Plaintiff is denied access to those materials by way of the untrained clerk's inability to effectively locate the materials on the law system. Undoubtedly, collectively, a denial of access. Defendants

are liable for maintaining, knowingly, an inexperienced and untrained clerk in that position.

(F) Equally parallel to the above being an obvious hindrance created by maintainment of "non-legal" programs on this law computer's data base, such as clip art programs; word processing programs; music programs; Excel, Word, etc... Those programs serve no purpose outside of creating a toy for the clerk to play with, rather, than provide time in the law programs for patrons.

(G) Plaintiff has provided at least nine (9) sworn-to affidavits from other prisoners in support of this very claim. (Exhibits #51-57 and 77-78).

46.   Therefore, defendants are maintaining a law library not at all close to standards set and

required for the Bounds library.  In addition to the vast amount of documented complaints

lodged by Plaintiff regarding the lengthy delays in accessing the law library, (Exhibits #4,

5, 7, 8, 10, 11, 12, 13, 14, 15, 24, 28. 33, 35), from point of request and scheduling until

physical access (21 – 30 days) and the nine (9) sworn-to affidavits from other prisoners at

the institution who experience the exact same circumstances (Exhibits # 51-57 and

77-78), Plaintiff, was recently placed on the list 1/18/2012 to continue preparation of

instant petitions, (Exhibit #79) and by 2/13/2012 some twenty-six (26) days later, had to

again lodge complaint for the lengthy delay. (Exhibit #79).  Namely due to the

indisputable fact that state documents will clearly reflect far too many "empty seats" in

the law library during this time period. (Noting that the District Court in Georgia held

that, at a minimum, reasonable access for each inmate wishing to use the law library shall

receive the equivalent of one full day (eight hours) of research time every three weeks

(21 days)(Mercer v. Griffin, 29 Cr.L.2058 (D.C. Ga. 1981)))

47.   Plaintiff seeks only prohibitory, preventive and mandatory injunction relief. The

institutional law library must, at the very least, allow equal access, or effective access; to

all materials maintained in the law library to allow unfettered access by the prison

population to the courts. Any and all interferences whether direct or indirect are

prohibited. If the "current" case materials are going to be maintained on only one (1)

computer, then the institution must provide adequate training to the clerks as to exactly

how the law systems operate; or as the only alternative, install user work station

computers via networking off of the server so each patron has access. There is no

question this can be done. Plaintiff has worked as an institutional library clerk at three

different institutions over an 8 ½ year period; both networking and researching these very

law computers and programs; even receiving a recommendation from an operations

officer to be "hired as a staff member" upon release".


Plaintiff seeks no monetary award in this regard, aside of the costs and fees for  bringing

this action.


**CLAIM FOUR:**
      **(COMMON ONLY TO DEFENDANTS A. JAMES, A. BRYANT AND H.
      CLARKE).**

      **PLAINTIFF'S RIGHTS GUARANTEED HIM BY THE FIRST,
      FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED
      STATES CONSTITUTION AND ARTICLE I, SECTION 8 OF
      THE VIRGINIA CONSTITUTION HAVE BEEN VIOLATED,
      TO WIT:**

      **"CONTINUING CONSPIRACY IN ATTEMPT TO IMPEDE,
      HINDER AND DENY ACCESS TO THE COURTS."**

48.  The reason congress amended the P.L.R.A. in 1995- which precluded the bringing of any
action with respect to prison conditions under 42 U.S.C. Section 1983, or any other
federal law, until "all available administrative remedies were exhausted" was to reduce
the quantity and improve the quality of prisoner suits. **Booth v. Churner**, 532 U.S. 731
(2001); **Porter v. Nussle**, 534 U.S. 516 (2002).

49.  Basic English understanding by officials is that of the fact, if prisoners don't exhaust their
remedies, they can't sue.  Accordingly, administrations have formulated a theory that
"rejects" prisoner complaints upon intake and regional appeal; thereby denying access to
the grievance procedure and disallowing exhaustion of administrative remedies.
Unfortunately for defendants, this is none other than a generic attempt and conspiracy
which ultimately hinders access to the courts.

50.  On 3/19/2010, Plaintiff attempted to lodge a complaint regarding hindered access to the
institutional law library.  Despite the fact Plaintiff indisputably refers to himself at least
Six (6) times in the complaint, the acting grievance coordinator on 3/25/2010 rejected the
grievance as "does not affect you personally". (Exhibit #61)  This was upheld by
defendant **A. Bryant** on 3/31/2010.

51.  On 4/30/2010, Plaintiff attempted to lodge a complaint regarding the law library.  On
5/3/2010 it was rejected as "does not affect you personally", (Exhibit #62) despite the fact
Plaintiff refers to himself at least twelve (12) times in the complaint.  On 5/13/2010 **A.**

**Bryant** rejected the appeal as untimely; overlooking the fact Plaintiff established he in
fact timely mailed the appeal. (Exhibit #63).

52.  On 11/6/2010  Plaintiff attempted to lodge a  complaint regarding denial of access based
     upon a verified filing deadline. Acting grievance coordinator received a "post-it note"
     instructing her "how to handle the complaint." (Exhibit #64). The complaint was
     rejected on intake 11/10/2010; claiming "does not affect you personally"; in spite of the
     fact Plaintiff referenced himself **AND HIS** filing deadline at least four (4) times.  (Exhibit
     #64)

53.  On 11/13/2010 Plaintiff attempted to lodge a complaint regarding denial of access on a
     confirmed filing deadline. Again, despite referencing himself at least six (6) times, the
     complaint was rejected on 11/15/2010 as "does not affect you personally" and upheld by
     defendant **A. Bryant** on 11/22/2010  (Exhibit #65).

54.  On 11/15/2010 Plaintiff attempted to lodge a complaint regarding denial of access on a
     confirmed deadline. This was returned to Plaintiff never even addressed (Exhibit #66).

55.  During a July 2011 review of Plaintiff's grievance records (with defendant **A. James**)
     Plaintiff discovered quite by accident a copy of grievance # NCC-10-REG-00002; a
     complaint Plaintiff filed regarding denial of access to the law library based on a federal
     court filing deadline. The investigator concluded "…there was a violation in applicable

policy." And the complaint was **FOUNDED** (Exhibit #67) on 12/2/2010. When

presented to Assistant Warden Jerry Townsend for signature, he however placed a sticky-

note on the front advising grievance officer to "unfound" the grievance. On 12/3/2010 @

2:48 p.m., despite the fact the initial "investigation" concluded policy violations, the

grievance officer; by directive of Assistant Warden Townsend, removed the "founded"

portion, changed it to "unfounded" and Assistant Warden Townsend signed it (Exhibit

#67). Upon discovering this July 2011, Plaintiff forwarded this to Regional Ombudsman

defendant **A. Bryant** for review of compliance with applicable policy. Defendant **A.**

**Bryant** returned the correspondence evading the meritorious subject. (Exhibit #67).

56.   On 7/13/2001 Plaintiff attempted to lodge a complaint regarding denial of access.

Despite referencing himself at least four (4) times, this was rejected on 7/15/2011 by

defendant **A. James** as "does not affect you personally" and upheld by defendant **A.**

**Bryant** 7/25/2011 (Exhibit #68).

57.   Exhibit #69, an attempt regarding same subject matter, was returned to Plaintiff with no

log number nor response.

58.   Exhibit #70 is a logged grievance that was returned as "insufficient information", despite

containing sufficient information.

59.   On 10/20/2011, Plaintiff again attempted to lodge his complaint regarding denial of

       access. Despite referencing himself at least six (6) times, defendant **A. James** rejected

       this on 10/24/2011 as "does not affect you personally", and defendant **A. Bryant** upheld

       this blockage of access to administrative exhaustion on 11/1/2011 (Exhibit #72).

60.   Of a much greater magnitude is the fact that on 9/19/2011, grievance #NCC-11-

       REG-00487 was **"FOUNDED"** by Regional Director Malcolm Taylor.  The regional

       investigation discovered that defendants at Nottoway Correctional Center did in fact

       "instruct" staff to "not issue " in formal complaint forms" to the offender population,

       (Exhibit #75).  As is substantiated by operating procedure ("O.P.") 866.1 (V)(A)(l), the

       prisoner's "good faith effort" shall be documented on in informal complaint form prior to

       seeking out the Adult Grievance procedure. (Exhibit #3, page 6 of 12).  Obviously if

       staff denies issuance of the required informal complaint form, and afore complaint was

       **FOUNDED** upon, they deny access to the Adult Grievance Process; of which exhaustion

       is a PLRA requisite prior to accessing the courts.

61.   Again on 12/15/2011, Plaintiff had to file grievance log # NCC-11-REG-00766 to set

       forth the fact that he (as were others) was denied an informal complaint in attempt to

       access the Adult Grievance procedure.  On 1/18/2010, defendant **A. James** "unfounded"

       the complaint, concealing factual evidence supporting Plaintiff's claim.  On 1/20/2012,

       defendant **A. James**' institutional level entry was (again) "overturned" by Gary L. Bass,

       Regional Administrator, **"FOUNDING"** the complaint and holding that the process of

denying offenders informal complaints violates O.P. 866.1, and two (2) particular Sergeants were in fact instructing officers to not issue these required forms. (Exhibit #76). Accordingly, the totality of circumstances and evidence shows not only, at least, ten (10) occasions Plaintiff's attempts to lodge meritorious complaints were blocked, but moreover, a finding of guilt by the department's own Regional Administrator of the fact staff at the Nottoway Correctional Center was instructed by defendants to not issue the required forms to accomplish administrative exhaustion not once, **but twice**. Therefore, defendants are guilty of conspiring to block or impede access to the courts.

62.    Plaintiff seeks $1.00 from each defendant; a prohibitory injunction advising defendants they must immediately cease any further unconstitutional attempts, and, any costs and fees related to the bringing of this action.

## V. RELIEF

I understand that in a section 1983 action the court cannot change my sentence, release me from custody or restore good time. I understand I should file a petition for a writ of habeas corpus if I desire this type of relief.

(initials)

The Plaintiff wants the court to:

-Award money damages as follows:

 **CLAIM ONE:**  $0.00 (¶ 30) (Plus costs & fees)

**CLAIM TWO:** $1.00 Compensatory Damages and $1.00 Irreparable Damages **upon each Defendant** (¶ 41)(plus costs & fees)

**CLAIM THREE:** $1.00 upon defendants **James, Bryant** and **Clarke** (¶62) (plus costs and Fees)


--Award injunction relief by:

**CLAIM ONE:** Prohibitory, Preventative and Mandatory injunction finding Operating Procedure 866.3 and actions by defendants unconstitutional and order defendants cease and desist such practices; with directions to revise the Operating Procedure Mandatory legal copies be made in the presence of the prisoner to prevent any direct or indirect screening of court filings. (¶30)

**CLAIM TWO:** Ordering the Nottoway Correction Center either install additional user computer stations allowing access by <u>all</u> prisoners wishing to research the "up-to-date materials in the computer data base" without hurdles or obstructions or in the temporary alternative, the current computer must be physically accessible by all wishing to access the research information and materials by way of removing the computer from the clerk's desk and placing it on the access counter.

**CLAIM THREE:** Ordering the Nottoway Correctional Center to not only bring the institutional law library "current" and "up-to-date" all research materials, but moreover to <u>maintain</u> the up-to-date status at all times; remove all reference books that are missing pages that have been torn out or destroyed and either restore the missing pages/sections or replace the volume entirely; maintain current and accurate forms (if the institute chooses to dispense them) and prohibit persons not trained in law from creating forms for dispensing to the prison population; and if the institution chooses to use a clerk in the position of conducting any and all research on this computer, they shall provide adequate training to educate the clerks exactly how to utilize the Lexis-Nexis law programs.

Order that the institution implement a system that allows prisoners wishing to access the law library without unnecessary 21-30 day delays; fill empty seats, and implement an efficient procedure for expeditiously allowing unrestricted access for prisoners with verified court filing deadlines.

**CLAIM FOUR:** Ordering defendants immediately cease any and all attempts to hinder, delay or deny access to the courts; any and all access to the Adult Grievance Procedure for allowance of administrative exhaustion as required by the P.L.R.A. and that defendants obtain training in the necessary educational areas to learn the basic fundamental obligations constitutionally owed prisoners when it comes to accessing the courts.

--Other

*Any additional relief the court deems necessary and appropriate.

## VI. PLACES OF INCARCERATION

Plaintiff has been at the Nottoway Correctional Center since August of 2008.

## VII. CONSENT

Plaintiff consents to proceed before a U.S. Magistrate Judge.

## VIII. SIGNATURE

Signed this ____17TH____ day of ____May____, 2012.

Plaintiff: _____
William Jay DiCaprio-Cuozzo

## ITEMIZED EXPENSE REPORT

| PAID TO: | PURPOSE | COST |
|---|---|---|
| United States District Court | Filing Fee Incurred | $350.00 |
| Joel D. Grey | Typing Services<br>45 Pages x $1.00= | $45.00 |
| William Langley | Copying Fees<br>250 Pages x 7 = 1750<br>x .25¢ Each = | $437.50 |
| Postage | To Mr. Grey | $2.70 - 3/26/12 |
| Postage | To Mr. Grey | $ 9.62 - 3/30/12 |
| Postage | To Mr. Grey | $ 9.62 - 4/2/12 |
| Postage | From Mr. Langley<br>Copies | $ 9.62 - 4/3/12<br>$ 65.00 - 4/14/12 |
| Postage | Filing To The Court | $ 40.00 |

Preliminary Expenses
Incurred:     $ 969.06

True and accurate to the best of my knowledge and belief.

Executed this 16ᵀᴴ day of April , 2012.

WILLIAM JAY DICAPRIO-QUOZZO
Plaintiff

#1121972, N.C.C.
P. O. Box 488
Buckeville, VA 23922



# Blackstone School of Law

DALLAS, U.S.A.

A.D. 1890

ESTABLISHED

confers this certificate of

## Legal Assistant/Paralegal

upon

## William Jay DiCaprio-Cuozzo

who has fulfilled all the requirements prescribed by the School
and is entitled to all of the honors, rights and privileges
thereunto appertaining.

In Testimony Whereof  this recognition of achievement is
Given this  14th  day  of January  A.D. 20 00 .......  at Dallas
in the State of Texas.



President

Director of Instruction

SEAL OF LAW

**Court   Copy**

## INDEX OF PETITION

**SUBJECT**             **PAGE**

Parties.................................................................................... 1,2

Liability Capacity...................................................................... 3

Previous Lawsuits...................................................................... 4

Grievance Procedure.................................................................. 5

Grievance History......................................................................6-11

Memorandum Applicable to All Grounds.....................................12-15

Statement of the Claim...............................................................16

     ■ Claim One.................................................................16-26
     ■ Claim Two.................................................................27-34
     ■ Claim Three............................................................. 34-40
     ■ Claim Four................................................................40-45

Relief........................................................................................ 46

Places of Incarceration............................................................... 47

Consent to U.S. Magistrate Judge................................................ 48

Signature.................................................................................. 48

In RE: <u>DiCaprio-Cuozzo v. Terry, et.al.</u>

# Notice of Intent
## (Common to all defendants)

Plaintiff stipulates a longstanding Modus Operandi of the Nottoway Correctional Center is that the administrative body currently in existence makes it a point to be extremely vocal to any prisoner(s) who intend to seek redress for alleged constitutional violations; that the parties litigating will "disappear" via retaliatory transfer from this facility, without delay (Mainly threatening inmates who have family in the Norfolk area that they will be transferred 7-9 hours away from the family to the western region: Wallens Ridge, Keene Mountain, Greer Rock etc.) This action originate from the "I'll show you who you're messing with" attitude and/or "I'll teach you a lesson". These actions have factually been deployed in this same regard to other prisoners who have litigated constitutional violations and/or conditions of confinement at the N.C.C. (Supporting affidavits attached as exhibit(s) #48).

Considering the merit of the Plaintiff's claims and high anticipation the court will intervene, Plaintiff likewise anticipated defendants to attempt the same form for afore retaliation.

Therefore, to immediately cease any/all such thoughts/attempts, Plaintiff notices defendants that he attaches as Exhibit #1 to his section 1983 filing for this court, documentation of February 4, 2011 and January 17, 2012; both state documents substantiating indisputably that the department had no position, plan, nor intent to transfer plaintiff whatsoever; and noted the "Nottoway Correctional Center is determined suitable housing for [Plaintiff]" prior to this filing.

If defendants attempt in any manner whatsoever to now (A) unjustifiably move Plaintiff from the institution without notifying this Court of their rationale; (B) institute any meritless or malicious disciplinary actions or (C) institute any form of retaliatory actions in any manner whatsoever; in response to this civil litigation, Plaintiff is authorized pursuant to Federal Rules of Civil Procedure (F.R.C.P.) to move the court for leave to amend the instant claims to include new claim(s) of "retaliation".

"Retaliation against a prisoner for exercising his Constitutional rights is in and of itself a constitutional violation." <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378 (1999). Also see <u>Crawford-El v. Britton</u>, 523 U.S. 574, <u>Valot v. Southeast Local School District Board of Education</u>, 107 F.3d. 1220, 1225 ("[A] claim of retaliation for exercise of the Constitutional Right of Access is in fact cognizable under section 1983") cert. denied -----U.S. -----, 118 S. CT 164 (1997).

Accordingly, defendants are forthwith placed on notice that, if in any way, shape or form, they attempt any form of retaliation upon Plaintiff for this exercise of his Constitutional rights, each

defendant will be, "in addition" to instant claims, individually liable to Plaintiff in separate tort actions under Section 1983 for said retaliation.

Noticed this _27__ day of _February_, 2012.

(notary)

VIRGINIA:

_____
Notary Court

_____  Notary Name
LM Taylor

_____  Notary Signature
LM Taylor

_____  Reg. #
7211193

_____  Comm. Exp.
February 29, 2012

William J. DiCaprio-Cuozzo, #1121972
Plaintiff

**NOTE:** The following grievances were **founded** and "corrective action" was ordered or Plaintiff advised actions were taken; however, as of this filing, no such corrections nor actions have been taken.

2-10-2011    NCC-10-REG-00006: Ordered that law library bring all research materials, books, and computers up-to-date and current. As of 3/18/2011 (see NCC-11-REG-00210, @ exhibit #19) the computer was still 9 months out-of-date. (see Exhibit #16).

3-07-2011    NCC-11-REG-00069: Plaintiff's legal documents submitted for legal copies lost for roughly 57 days. Corrective actions were ordered. (see Exhibit #17). However, defendant **A. James'** own admittance on 2/24/2011, 5/16/2011 and 7/1/2011 (Exhibits #43, 44, 45, 46 & 47) clearly supports that no corrective actions have been taken; and the policy and procedure is still in effect @ NCC.

7-06-2011    NCC-11-REG-00470 and 00471: Ordered that law library was non-compliant and that all forms issued from law library be corrected and current. As of this filing forms with incorrect filing addresses, jurisdiction statutes, and filing fees are issued. (see Exhibits #25 & 26).

7-19-2011    NCC-11-REG-00487: Founded that staff was denying access to Adult Grievance Procedure and corrective action ordered (Exhibit #75). However, as of 2/22/2012, no corrections took place and in fact a second grievance was **founded** (NCC-11-REG-000766 (Exhibit #76)) for the exact same issue still occurring.

8-4-2011    NCC-11-REG-00517: Scheduling for law library made too far in advance and no pass list issued. Action was ordered, however, to date; the schedules are still being made circa 30 days in advance. (Exhibit #28).

8-17-2011    NCC-11-REG-00537: Legal copies of Plaintiff were missing. (Exhibit #29). However, procedures for legal copies- as is in this lawsuit- is still in effect; despite the Human Rights Advocate (defendant James) recognizing the corrective action was never implemented from the 3/7/2011 founded grievance (Exhibit #17) (See also #'s 43, 44, 45, 46 & 47).

1-9-2012    NCC-12-00016: Concluded prisoners not properly notified of their scheduled sessions and alleged notification would be available "two days in advance" in the control booth for offender viewing. This however is furthest from the corrective action. These "pass lists" are never available 2 days in advance and are, if you are lucky, posted daily "on the day of" (Exhibit #33).

Accordingly, this chronologicial listing in itself shows an obvious pattern of defendants inattentiveness, negligence, and with all due respect, an "I couldn't care less" attitude.

**ADDITION:**

1-17-2012    <u>NCC-12-REG-00030</u>,Defendant Janet Terry failed to adequately reply to Plaintiff's Law Library request form and the complaint was FOUNDED. (Exhibit #34). No corrective action was enforced, as a second and seperate complaint had to be filed for the exact same issue/neglect (NCC-12-REG- _00153_) by the same individual. (Exhibit #82). It is further noted that Defendant A. James initially attempted to "Reject" the latter complaint upon intake as yet another "Does Not Personally Affect You;" despite her having logged the first; however, Defendant A. Bryant "Overturned" the decision and concluded the complaint did in fact meet the criteria for intake and ordered it be lodged.